## HIGHTOWER et al. v. STATE.
### No. 13087.

Court of Civil Appeals of Texas. Dallas.
Oct. 24, 1941.

Rehearing Denied Nov. 28, 1941.

Francis M. Chaney, of Dallas, for appellants.

Dean Gauldin, Dist. Atty., and H. Pat Edwards and Warren S. Cook, Asst. Dist. Attys., all of Dallas, for appellee.

YOUNG, Justice.

The State, through the District Attorney of Dallas County, instituted these proceedings under Art. 637 of the Penal Code, Vernon's Ann.P.C. art. 637, for the destruction of seven devices commonly known as marble tables, slot machines, or marble slot

machines, allegedly kept or exhibited for the purpose of gambling, in violation of Art. 619, P.C. J. J. Hightower, alleged to own an interest in all the devices, and Charles Skibos, John Cooper, George Hodges, E. Wright, M. Petroff, 'C. H. Herbig and Rex Allen, from whose possession. the devices were taken, were named defendants. The pleadings filed by the District Attorney alleged that the tables or devices were seized by the Chief of Police of the City of Dallas, gave a list of same, the names of the persons from whose possession the devices or tables were taken, designated the places where the seizures were made, praying for destruction of same, as provided by statute. Defendants were cited and answered by plea in abatement, in effect, a plea to the jurisdiction, general denial, alleged that the defendant Hightower owned the devices or tables, but that they were leased to and in the possession of the other defendants at the time of the seizure; praying that the State be denied the relief sought and that the property be restored to the owner, and for general relief.

From a judgment ordering destruction of all seven tables, this appeal was taken. The structure of the marble boards so condemned was generally the same, each consisting of a wooden box frame, with four adjustable wooden legs. On the surface was a playing field containing various pins, knobs, springs and runways. At the head of the device, and above the playing field, was an upright board, indicating the score following every play, all being electrically controlled; the type of score varying with the design of the machine. Each was operated by placing a five-cent coin in a slot, releasing metal balls which were separately propelled into the playing field by means of a spring plunger; the ball, by touching various pins, regulated the individual and final score. On the glass surface thereof were the words "For Amusement Only". The effort on part of the player, it would seem, was to obtain the highest possible score. The machines had been installed upon the premises of the various defendants, other than Hightower, and were only incidental to the particular business of such shop owners or proprietors.

Concerning two of the tables (Nos. 2020 and 2031), it was conceded that, should a player succeed in dropping one of the metal balls into a certain hole, he became entitled to and would automatically win a free game. Art. 619, Vernon's Ann.P.C., under which this action is prosecuted, deals with the offense of "Keeping or exhibiting gaming table or bank, etc."; and, in part, provides: "Any such table, bank, wheel, machine or device shall be considered as used for gaming, if money or anything of value is bet thereon." It has been generally held that amusement is "a thing of value" and that free games won on devices and under circumstances as above portrayed are under the condemnation of the statute, rendering machines Nos. 2020 and 2031 gaming devices per se; State v. Langford, Tex. Civ.App., 144·S.W.2d 448; Kraus v. City of Cleveland, 135 Ohio St. 43, 19 N.E.2d 159; Rankin v. Mills Novelty Co., 182 Ark. 561, 32 S.W.2d 161; Annotations to Painter v. State, 81 A.L.R. 177; 24 Amer.Jur. Sec. 35, p. 423.

As to the other machines (five in number), it is undisputed that none had any automatic "pay-off" adjustment; and that the only result from playing thereof was the amusement of the player in securing a high score. No testimony whatever discloses an understanding on the part of any store proprietor to pay "over the counter" for high or particular scores; or that any player was seen or permitted to bet on the machines' operation. Notwithstanding this state of the record, however, the trial court found, among other things, that "each of these machines is so equipped that by slight mechanical changes the automatic pay-off, whereby the machines automatically pay off certain amounts of money when a designated score is made, can be attached to the machines and so operated automatically; * * * That machines exactly like the machines in question or machines operated on the same principle and similar to these, have been used in Dallas for the last five years for betting and gaming, whereby the owner or manager of the place of business where the machine is located pays off 'over the counter' on previously agreed scores, the payment over the counter being in proportion to the score made; and further, that said machines have been used extensively during the last five years for betting and gaming whereby two players play for high score and bet on the outcome."; and "the only reasonable and profitable purpose for which these machines may be used is for gaming, in violation of Article 619 of the Penal Code * * *."

There was no evidence that any tools or appliances were on the premises involved for making the "mechanical changes" above referred to; and the court refused appellants' request for a finding of whether the

tables were, at the time of their seizure, being exhibited for the purpose of gaming.

Thus, the trial court has held that the five tables in question were gaming devices per se, despite uncontradicted testimony that the only capacity in which they were being used at the time of their confiscation was for the players' amusement. The statute does not expressly classify marble boards, or like devices, as inherently offensive; hence the question of illegality must hinge upon the nature of their actual use. "A slot machine, it has been said, is not per se a gambling device, since it may be used or played upon for innocent purposes; and the courts cannot, therefore, take judicial notice that every slot machine is a gambling device, since the use to which it is put must determine its character." 24 Amer.Jur. § 35, supra. "A gaming table is not determined by its structure, but by the purpose for which it is exhibited"; Houghton v. Fox, Tex.Civ.App., 93 S.W.2d 781, 782; and in all Annotations under Art. 619, Vernon's P.C. Vol. 1, p. 566, where this phase of the statute has been considered, it is uniformly stated that "Whether or not the table was designed for gaming purposes is immaterial—it is the game or character of play on it that determines its status." It would follow, therefore, that marble machines of the "non-pay-off" variety, as to which no evidence is adduced of their being used for gaming purposes at the time of seizure, are not gambling devices within the inhibition of above statute; for, no matter what the structure of these particular boards may be, whether games of chance or of skill, they are not to be classed ipso facto as gambling devices, so long as not used for gambling purposes; i.e., where no money or thing of value is bet thereon. An entirely different situation would exist if, by mechanical adjustment, the machines were made to pay off; or if an understanding be had with the proprietor "over the counter" to the same effect; or in case of knowledge and acquiescence by the machine keeper to a wagering by players upon resulting scores. The machines would then become gambling devices per se, placing defendants factually within the purview of Houghton v. Fox, supra; but such evidence is wholly absent from this record. We also conclude that the test applied by the trial court "that the only reasonable and profitable purpose for which these machines may be used, is for gambling, in violation of article 619 of the Penal Code," is not controlling of the instant facts. The statute is not so worded and, as we view the decisions, it has not been so interpreted.

The property was taken from the possession of defendants herein, Hightower alone asserting ownership. The pleadings and stipulations of the parties are sufficient to entitle all defendants to appeal from the court's judgment and for restitution. It is our opinion that the destruction order under review should be affirmed as to machines Nos. 2020 and 2031, but reversed and rendered as to the remaining five numbered machines; and that proper instructions issue restoring same to their owner or lessors, as defendants may elect.

Affirmed in part; reversed and rendered in part.

LOONEY, J., dissents.

LOONEY, Justice (dissenting).

I respectfully dissent from the decision of the majority in reversing and rendering the judgment in favor of appellants as to five of the machines involved, and, later in the opinion, will state my reasons. The statement of the nature of the suit, made by the majority, in my opinion is correct, hence I assent thereto. I also assent to the affirmance of the judgment, for the reasons stated, as to two of the machines involved; that is, No. 2020, taken from the possession of Rex Allen, and No. 2031, taken from the possession of E. T. Wright. I also assent to the implied holding of the majority, overruling the jurisdictional questions raised by the appellants, but in view of the probable future of the litigation, think reasons therefor should have been stated, and this, I shall now attempt to do.

In regard to the contention that the court was without jurisdiction to order the destruction of the machines because of the failure of the officials to comply with the provisions of Arts. 632, 633, 636 and 637 of the Penal Code, Vernon's Ann.P.C. Arts. 632, 633, 636, 637, the record discloses that, the pleading filed on behalf of the State, by the District Attorney, contained a list and description of the property seized by the Chief of Police, the place where each machine was seized, the name of the person claiming same and from whose possession the same was taken, as required by Art. 636; praying that the parties named be served with notice to show cause why the

machines should not be destroyed. In response to the notices, appellants appeared and answered at great length, challenged the jurisdiction of the court, the sufficiency of the facts to authorize the destruction of the machines, and appellant Hightower, asserting ownership to all the machines, prayed judgment that they be restored to his possession. These issues were tried out, resulting in the judgment appealed from.

Appellants had their day in court on all material issues; and Hightower, owner of the property, having affirmatively sought recovery of the same, presented all issues and sought the relief as prescribed in Art. 638 of the Code, substantial compliance with the statute was had, hence appellants have no just cause for complaint that, the procedure prescribed by statute was not literally pursued. The procedure followed in the instant case seems to have been the same as in State v. Langford, Tex.Civ.App., 144 S.W.2d 448.

The contention is further made that the court was without jurisdiction to order the destruction of the machines, because they were seized and taken from the possession and place of business of appellants, without their consent and without a warrant. It is true, the devices or machines were seized and taken possession of by the Chief of Police, without a warrant, but, in view of the findings of the court, it does not follow that the seizures were unreasonable. These devices were unprofitable for any purpose except for gambling, therefore were, per se, gambling devices; exhibited by appellants in their respective places of business, open to the entire public, including the police officers. In their seizure, neither an unlawful entry nor search of the premises was required. In view of these facts, it cannot be said that, the seizures were unreasonable. Section 9 of the Bill of Rights, Vernon's Ann. St., and Art. 4 of the Code of Criminal Procedure provide that: "The people shall be secure in their persons, houses, papers and possessions from all unreasonable seizures or searches. No warrant to search any place or to seize any person or thing shall issue without describing them as near as may be, nor without probable cause supported by oath or affirmation."

In 1925, the Legislature added to the above provision of the Code, Arts. 4a and 4b; Art. 4a reads as follows: "It shall be unlawful for any person or peace officer, or State ranger, to search the private residence, actual place of habitation, place of business, person or personal possessions of any person, without having first obtained a search warrant as required by law"; and Art. 4b provided that, anyone violating the provisions of Art. 4a shall be guilty of a misdemeanor and punished accordingly. It is significant that in 1929, the Legislature repealed Arts. 4a and 4b, stating in the emergency clause of the repealing Act that: "The fact that the Articles [4a and 4b] have the effect of retarding and hindering the enforcement of the Criminal laws of this State, and of hampering and embarrassing the Peace officers of the State in the faithful execution of the laws, creates an emergency and an imperative public necessity requiring" suspension of the Constitutional Rule, etc., "and that this Act shall take effect and be in force from and after its passage, and it is so enacted." See Acts Second Called Session, 41st Leg., Ch. 44, pp. 78, 79. It thus conclusively appears that, in the opinion of the Legislature, the general requirement that searches and seizures could not be had without first obtaining the issuance of a search warrant, retarded and hindered the enforcement of the criminal laws of the State, creating such an emergency as to demand its immediate repeal. In Moore v. Adams, Tex.Civ.App., 91 S.W.2d 447, 449, the Amarillo Court said: "The Constitution and statutes do not prohibit every character of search and seizure without a warrant, but prohibit unreasonable searches and seizures. These machines were operated for gaming purposes in public places to which the entire public, including the sheriff and his officers, had access. He had actually seen parties gambling on at least a part of the machines involved. There was no unlawful entry to make the seizures. The court passed on probable cause, and, in our opinion, under the facts, was authorized to find that the defendant in this case acted on probable cause. Jenkins v. State, 116 Tex.Cr.R. 374, 32 S.W.2d 848, 849."

The majority, after setting aside the material fact finding of the trial judge, reversed the judgment below and rendered judgment in favor of appellants as to five of the machines, for the alleged reason that the finding was wholly unsupported by evidence. They say: "Thus, the trial court has held that the five tables in question were gaming devices per se, despite uncontradicted testimony that the only ca-

pacity in which they were being used at the time of their confiscation was for the players' amusement." Guided by and consistent with this, in my opinion, unwarranted assumption, the majority reached its decision.

The findings of the trial court, in my opinion, were authorized both by direct evidence and reasonable inferences to be deduced therefrom. Among others, the court found: That all seven of said machines and devices are commonly known as marble tables, slot machines and marble slot machines, and that the structure of each, although varying in some regards, is substantially as described in the majority opinion; also found that the predominating factor in playing or operating the machines was chance, that skill played a minor part; that the only reasonable or profitable use of the machines was for gambling, in violation of Art. 619 of the Penal Code; that the machines were constructed and equipped so that, by a slight mechanical change, they would automatically pay off amounts of money when a designated score was made; that machines exactly like those in question, operated on same principle, have been used in the City of Dallas for at least five years for betting and gaming purposes, whereby the owner or manager of the place pays "over the counter" on a previously agreed score having been attained, and whereby two players operate the machine for high score and bet on the outcome; that in the operation of all the machines in question, the purpose of the game is to make a high score, and the high score wins. From the findings, the court concluded, as a matter of law, that each of the machines or devices was prohibited by Art. 619 of the Penal Code, and should be destroyed under Art. 637 of the Code.

It was with reference to this finding, the majority stated that, "The trial court has held that the five tables in question were gaming devices per se, despite uncontradicted testimony that the only capacity in which they were being used at the time of their confiscation was for the players' amusement." As before stated, I am of opinion that the evidence warranted the finding of the trial court. Profert of the machines involved having been made, they were before the court for inspection and for a better understanding of the testimony with reference thereto. Officer Clinkenbeard testified that he had had considerable experience with similar slot machines and gambling devices, and that the machines involved can easily be transformed into automatic pay-off by changing the inside mechanism slightly; having testified that the machines could be used for gambling, on cross examination, was asked: "Q. In other words, when you say it could be used for gambling purposes, you mean it could be used for gambling purposes like any other device? A. There is no other use for those things. The only thing they are used for is gambling."; asked, "Q. Is there any amusement in playing it (the machine)? A. Gambling is more or less amusement." The witness also stated that playing the machine would hold no amusement for him unless there was a pay-off. Officer Griffith, five years with the Police Department of the City of Dallas, after describing the machines and their operation, was aked: "Q. Do you know of any useful or profitable purpose, aside from gambling, they can be used for? A. No sir." Officer Henderson, after describing the machines, their operation, etc., was asked: "Q. Can this machine be used for any useful purpose other than gambling? A. No sir."; asked "Q. Have you seen machines like this before? A. Yes sir."

The testimony of appellants, from whose possession the machines were taken, bearing upon the point under consideration, is as follows: Rex Allen, operator of a bar, sandwich and domino hall, called Hilliard's Smoke Shop, in which one of the machines was kept, testified that he didn't permit gambling on the machine "not if I knew about it." He said, however, that two persons could bet on the game "If they are going to gamble, they are going to gamble on any device." Speaking of playing the machine just for amusement, the witness said, "I wouldn't have played it the second time."; later was asked: "Q. You couldn't keep me from gambling in there? A. I couldn't keep you from smoking"; asked "Q. Isn't it common knowledge that they do? A. I try to stop them.

"Q. You know that is why people try to go there? A. I don't know." Appellant E. T. Wright, operator of a news stand, had posted up a notice "No Gambling Allowed"; testified that two persons could bet on the machine, "but not if I were there."

"Q. You are familiar with marble machines in Dallas? A. Yes sir.

"Q. You know they have been generally used for gambling? A. Quite so.

"Q. You know that is practically the only purpose (objection overruled)? A. They have been.

"Q. It could be used and is primarily used for that purpose? A. As far as I know, they were used for that purpose." Appellant Herbig, operator of a cafe, testified that the machine could be used for gambling; had known for five years such machines had been used in the City of Dallas for gambling; didn't permit gambling, but admitted that he wouldn't know all the time what was going on, but would stop gambling if he saw it. Appellant Petroff, operator of a candy company, testified that he didn't permit gambling on the machine, but that it could be so used; that two persons could play for high scores. Appellant Skibos, operator of a cafe, testified that people play on the machine for amusement "a little bit; not much."; that it is capable of being gambled on.

I submit that no reasonable conclusion can be drawn from the evidence, other than that the machines involved are gambling devices, denounced by law as nuisances and their very existence against public policy. The contention that they were exhibited for amusement would not appease the demands of the law. However, the trial court had the right, in judging the credibility of the interested parties and the weight to be given their testimony, to reject their contention that the machines were exhibited for amusement. I think the court could properly conclude, from the nature of the machines, and all the facts and circumstances surrounding their exhibition, as evidently it did, that they were being exhibited primarily to encourage gambling, that being, according to the undisputed evidence, the only use that would prove profitable to the exhibitors. The use of the machines for amusement, according to the testimony of appellants themselves, seems to have been negligible, as they discredited the idea that the machines would be attractive merely for amusement. One appellant stated that he would not be tempted to play the machine a second time merely for pleasure, and another said they were played for pleasure "a little bit; not much."

Appellants contend that, although the tables or devices could be used for gambling, yet, as the evidence failed to show such use, it could not be said that they were being exhibited for that purpose in violation of Art. 619 of the Penal Code.

Arguing this contention, after quoting the concluding language of Art. 619, reading: "Any such table, bank, wheel, machine or device shall be considered as used for gaming, if money or anything of value is bet thereon.", they say: "Clearly then, the language of the statute says that before any article may be destroyed, it must be used for gaming and the language clearly designates when it is used for gaming, that is, when anything of value is bet thereon"; in other words, the argument is made that unless it is shown that money or something of value is bet at the machine, the law is not violated by the mere exhibition thereof; hence, in the absence of such proof, the machines cannot legally be destroyed. It seems that the majority substantially adopted and based their decision upon this contention.

I cannot accept this view of the matter. The offense defined by Art. 619 is not betting, that offense being separate, distinct, and differently punished, as provided in Art. 624; the offense defined in Art. 619 is keeping or exhibiting such table or device "for the purpose of gaming." "The word 'exhibited' is intended to signify the act of displaying the bank or game for the purpose of obtaining bettors." is the language of Art. 623 of the Code, showing clearly that it was not incumbent upon the State to prove that money or anything of value was bet at the tables or devices in order to authorize their destruction. While it is true the statute makes proof of betting at the table or device conclusive evidence that it was being exhibited for the purpose of gaming, yet the offence may be proven by other pertinent facts or circumstances, as I submit was done in the instant case. This has been repeatedly held. See Brogden v. State, 47 Tex.Cr.R. 121, 80 S. W. 378; Houghton v. Fox, Tex.Civ.App., 93 S.W.2d 781; State v. Langford, Tex. Civ.App., 144 S.W.2d 448. In Brogden v. State, the Court of Criminal Appeals, whose construction of Criminal Statutes is controlling, said: "Appellant complains of the charge of the court particularly because it instructed the jury that it was not necessary for the state to show that any betting was done at the bank or table. This was in accordance with the statute, it being held only necessary that the table or bank be exhibited for the purpose of gaming. * * *". In Mills v. Browning, Tex.Civ.App., 59 S.W.2d 219, 220, the Fort Worth Court, in a similar situation,

said, "The state was entitled to make out its case by circumstantial evidence."

Notwithstanding the denial of the defendants that gambling on the devices was invited, or that there was any arrangement for a pay-off over the counter on an agreed score being made, in view of the fact that the machines in question are unprofitable for any purpose other than for gambling, it follows, I think, that they are gambling devices per se, and that their exhibition in the public places, open and accessible to all, was but an invitation to bet thereon, by anyone who desired. With reference to a similar state of facts, controlled by a similar statute, the Supreme Court of Arkansas, in Stanley v. State, 194 Ark. 483, 107 S.W.2d 532, held that: "A novelty baseball game machine operated by placing coin in slot so as to release plunger and five steel balls for play on a field set with bumper springs which directed balls into various slots as outs or runs, thus determining winning score as recorded on electric score board was subject to seizure under statute as a 'gambling device,' notwithstanding no prize was offered for any particular results, since only reasonable and profitable use to which it might be put was as a game of chance."

But to conclude the whole matter, I think appellants are precluded by the provisions of Art. 634, Penal Code, denouncing the existence of all gaming paraphernalia or devices of "whatever kind or character" against public policy and a public nuisance, and that "No suit shall be brought or maintained in any court of this State for the recovery of same or for any insurance thereon, or for damages by reason of any injury to, or for the destruction of same." Also see Roberts v. Gossett, Tex. Civ.App., 88 S.W.2d 507 and Houghton v. Fox, Tex.Civ.App., 93 S.W.2d 781, 783.

If it be the law that keepers of cafes, sandwich and news stands, beer joints, etc., are permitted, with impunity, to expose gambling devices to the public, as the machines involved were exposed, under the camouflage of "For Amusement" and "No Gambling Allowed" placards, they could, by the same token, establish and conduct casinos containing many tables, where all ages, sexes and colors could congregate and gamble ad libitum, and where children of the 'teen age could take their first kindergarten lessons in gambling. The law, in my opinion, intended to prohibit the possibility of all such by denouncing and condemning to destruction all gambling devices and paraphernalia of whatever kind and character. For the reasons stated, I am of opinion that the judgment of the trial court was eminently correct and should have been affirmed in its entirety.