H. L. NEILL V. STATE.

No. 26,454. May 27, 1953.

*Leonard Brown, Sr., Theo P. Henley, Archer & San Miguel,* by *Van Henry Archer,* San Antonio, for appellant.

*Austin F. Anderson,* Criminal District Attorney, *Richard J. Woods,* Assistant Criminal District Attorney, San Antonio, and *Wesley Dice,* State's Attorney, Austin, for the state.

DAVIDSON, Judge.

The count in the indictment upon which this conviction was predicated charged that appellant "did directly and through his agent, Martin Ebest, unlawfully keep and exhibit for the purpose of gaming, a gaming device, to-wit: a one-ball marble machine." Punishment was assessed at two years in the penitentiary.

By motion to quash, appellant challenged the sufficiency of the indictment because of the failure to allege that the one-ball marble machine was a gaming table or device as specifically mentioned in Arts. 619 and 621, Vernon's P. C.

Such an indictment as here presented was approved by this court in Martin v. State, 144 Tex. Cr. R. 313, 162 S. W. 2d 722.

It must be remembered that the statute (Art. 619, P. C.) is broad in its terms and includes any device, of any name or description whatsoever, which is kept or exhibited for the purpose of gaming; also, that Art. 621, P. C., expressly precludes the construction that, by specifying the games, it was intended to exclude all others.

Martin Ebest was the owner of the Broadway Bowling Alley. His son, Ted Ebest, was the manager and in active control of the bowling alley. According to the testimony of both Martin Ebest and his son, appellant placed in the bowling alley some time during the month of April, 1952, what is called and referred to as a remote control one-ball marble machine. The proceeds derived from the operation of the machine were to be divided equally between Martin Ebest and the appellant. It was agreed, also, according to the testimony of Ebest, that the winnings of players on the machine were to be paid in money or in free games.

On the afternoon of September 27, 1952, Kennedy—an assistant district attorney—went to the bowling alley in accordance with his assignment to investigate marble table activities. He decided to play the marble machine and gave to Zamzow, who was in charge of the premises and the bartender therein at the time, a fifty-cent piece, saying that he "would like to have

ten games on the machine." Zamzow accepted the fifty-cent piece and went to a small box situated behind the bar some distance from the machine. Zamzow pressed a button on this box, whereupon a box on and connected with the machine showed that Kennedy was entitled to play ten games at five cents per game.

A player would, by a device, propel a ball or marble to the top of the machine. If in descending the ball fell into certain holes upon the board, the player would either receive other games free or could collect in cash at the rate of five cents for each game won. The rolling or playing of the ball each time through the machine constituted a game.

Kennedy played his ten games and failed to win. He purchased five additional games and, by the second ball played, won three free games. The fact of his winning was indicated upon a box situated on the top of the machine. Kennedy made known to Zamzow that he desired to play the three free games that he had won rather than to take the money therefor. Zamzow thereupon pressed another switch or button which transferred the three games that Kennedy had won through what was referred to as the "register," and he was thereby enabled to play the three free games. Kennedy played these games, together with the games remaining of the five purchased, without winning.

He reported to his superiors, and, three days thereafter, the machine was confiscated as a gaming device. It was introduced in evidence upon the trial of the case.

It was the particular mode and method of operating the machine which no doubt caused it to be characterized as a "remote control" one-ball marble machine, as distinguished from a slot machine as defined by Art. 642a, Sec. 1(b), Vernon's P. C., relating to operation by insertion of a coin or token into the machine.

According to the testimony of Ted Ebest, he paid off, both in free games and in money, winners playing the machine during the time it was in the bowling alley. He gave, however, no details or specific dates of such transactions. He admitted that Zamzow was his employee and that in paying out money or giving free games won on the machine he was following his instructions. Zamzow did not testify.

Under the facts stated, we have no difficulty in arriving at the conclusion that the machine, as operated, was a gaming table or device within the meaning of Art. 619, P. C. Broaddus v. State, 141 Tex. Cr. R. 512, 150 S. W. 2d 247; Martin v. State, 144 Tex. Cr. R. 313, 162 S. W. 2d 722; Hightower, et al, v. State, 156 S. W. 2d 327.

Appellant, testifying in his own behalf, denied that he had any knowledge that either Martin Ebest or Ted Ebest ever advised him of the fact that the marble machine was being operated as a gaming device or that he was a party to any agreement of that nature. He expressly defended upon the fact that on September 23, 1952, or four days prior to the time of the alleged offense, he sold the machine, by written bill of sale, to E. A. Skifter; that he (appellant) was therefore not the owner of the machine at the time it was alleged to have been exhibited as a gaming device and was not entitled to participate in the profits therefrom; and that Ebest could not have been and was not his agent in the operation of the machine.

Skifter, together with the witness Olson, corroborated the appellant as to the sale and transfer of ownership of the machine.

In keeping with that theory, appellant sought to have the jury instructed to the effect that if they entertained a reasonable doubt as to whether Skifter was the owner of the marble machine at the time of the alleged offense they would acquit the defendant. The converse of such charge was also requested —that is, if appellant was not the owner of the marble machine at the time, they would acquit.

Each of the charges requested was refused, and the trial court in his charge made no specific reference to the alleged transfer of ownership of the machine.

The bills of exception presenting this matter certify that the state elected to stand upon the date of September 27, 1952, for a conviction.

While it is true that the trial court appended a qualification to the bills of exception limiting the effect of that certificate, also and in connection therewith he certified that appellant excepted to that qualification. Accordingly, the bills of exception must be appraised by us without reference to the qualification.

Byrom v. State, 154 Tex. Cr. R. 121, 225 S. W. 2d 842; Palmer v. State, 154 Tex. Cr. R. 251, 226 S. W. 2d 634; Lovett v. State, 154 Tex. Cr. R. 483, 228 S. W. 2d 855.

It is apparent, not only from the express certificate in the bills of exception but also from the evidence, that the state relied for a conviction on the transaction as testified to by the witness Kennedy and occurring on September 27, 1952.

We are unable to say, however, that the fact of non-ownership of the machine would, alone, require appellant's acquittal at the hands of the jury. Such is the legal effect of the charges as requested. They were therefore properly overruled as not being correct in law.

In connection with this conclusion, it is pointed out that, under the state's testimony, the marble machine was exhibited as a gaming device by the joint and combined efforts of several individuals, each performing some part in furtherance of the illegal enterprise. Appellant's part was to furnish the machine. Whether he did or did not actually own the machine at the time would not, of itself, render him guiltless.

This brings us to a determination of the questions which are decisive of this appeal.

Upon cross-examination of the witness Skifter and of appellant, each was required to testify that he had prior thereto been convicted of the misdemeanor offense of gambling and had paid fines therefor in county court.

Among the objections urged to this testimony was that it was impeaching the witnesses by proof of misdemeanor convictions not involving moral turpitude.

Under the provisions of Art. 732a, Vernon's C. C. P., a witness may be impeached only by the proof of a prior final conviction. Such statute did not change, alter, or vary the long established rule that proof of prior convictions for crime will be received for impeaching purpose only when the offense is a felony or one involving moral turpitude.

The misdemeanor offense of gaming is not an offense involving moral turpitude. Handy v. State, 136 Tex. Cr. R. 208, 126 S. W. 2d 30.

Appellant, having testified to facts showing that he was not guilty of the offense charged, was entitled to have the jury pass upon his credibility as a witness, unhampered and unimpaired by illegal and inadmissible impeaching testimony.

The judgment is reversed and the cause is remanded.

Opinion approved by the court.