**Juan Daniel MORENO and Francisco Gonzalez Moreno, Appellants,**

v.

**The STATE of Texas, Appellee.**

**Nos. 59057—59059.**

Court of Criminal Appeals of Texas, Panel No. 1.

Sept. 19, 1979.

Rehearing En Banc Denied Oct. 24, 1979.

---

Anthony Nicholas, Roy R. Barrera and Terrence W. McDonald, San Antonio, on appeal only, for appellants.

Oscar B. McInnis, Dist. Atty., Edinburg, and Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ROBERTS and CLINTON, JJ.

## OPINION

ONION, Presiding Judge.

These are appeals from appellants' convictions for murder and from an order revoking the probation of appellant Francisco Moreno granted in a possession of marihuana case. The jury assessed punishment at forty (40) years' imprisonment for each appellant in the murder cases, and following revocation, appellant Francisco Moreno was assessed a five (5) year sentence.

The sufficiency of the evidence is not challenged. Suffice it to say the record shows that on Sunday afternoon of August 8, 1976, two groups of people were eating a late lunch in Wyatt's Cafeteria in McAllen. One group consisted of the appellants and two acquaintances (a husband and wife) whom they had invited to eat with them. The other group consisted of the deceased,

Octavio Tirado, Oscar Perez and Francisco Uranga, the latter two being citizens of Mexico. The Moreno group left the cafeteria first and some ten or fifteen minutes later the deceased and his companions left. As they approached their car, they were attacked by gunmen. Tirado was killed and Ozuna was wounded; Uranga escaped. At trial Uranga identified the appellants as the gunmen who shot and killed Tirado. Appellants relied on the defense of alibi and claimed a frame-up. Defense witnesses placed the appellants elsewhere at the time of the shooting and an attempt was made to show that Uranga arranged Tirado's murder and then sought to implicate the appellants. The jury by their verdict rejected such claims.

■ In their first ground of error appellants contend the trial court erred in overruling their "timely presented motion to summon 147 prospective jurors excused in violation of the applicable laws of the State of Texas."

It appears that at a previous setting of the cases the court granted appellant's motion to quash the jury panel. While it is not clear, it appears the ruling was based on irregularities and loose practices in excusing prospective jurors. Another jury panel was summoned for October 4, 1976. On such date the appellants filed an instrument simply entitled "Motion" requesting that 310 prospective jurors who had been improperly excused be summoned. The number was later changed to 147 prospective jurors. In support of their motion, appellants called a deputy district clerk who testified as to the procedures used in excusing prospective jurors summoned for October 4, 1976. Her testimony from the earlier and successful hearing on the motion to quash the jury panel previously summoned was offered. There is nothing to show that any prospective jurors summoned for October 4th from which the jury in these cases was selected were improperly excused. Further, we do not find that the appellants obtained a ruling on their "Motion." We further observe that Article 35.01, V.A.C.C.P., concerning attachment of absent prospective

jurors, has been held to be directory, not mandatory. *Stephenson v. State,* 494 S.W.2d 900 (Tex.Cr.App.1973); *Brown v. State,* 475 S.W.2d 938 (Tex.Cr.App.1971); *Dent v. State,* 504 S.W.2d 455 (Tex.Cr.App. 1974). We also observe they have failed to show any injury if in fact the court did refuse to summon the previously excused prospective jurors.

There appears to be some argument that the "Motion," despite its simple designation and its contents, should be considered as a motion to quash the jury array. We observe, however, that Article 35.07, V.A.C. C.P., requires that a challenge to the array be supported by an affidavit. There is no affidavit attached to the "Motion" in question. *Hurd v. State,* 513 S.W.2d 936 (Tex. Cr.App.1974), and cases there cited. Appellants' ground of error is overruled.

■ Next, appellants contend the trial court erred in failing to sustain two of their challenges for cause and subsequent request for two additional peremptory challenges or strikes.

The only part of the voir dire examination brought forward in this record is the separate examination of prospective jurors Townsend and Morin to whom challenges for cause were overruled. It does appear that prior to striking the jury lists the appellants asked for the additional peremptory challenges in light of the court's rulings on the challenges for cause to Townsend and Morin. Such request was denied. The appellants rely upon *Wolfe v. State,* 147 Tex.Cr.R. 62, 178 S.W.2d 274 (1944), wherein this court wrote (at page 281):

"... in the trial of a criminal case where an accused has been wrongfully deprived of a peremptory challenge by being forced to use such upon a juror who was shown to be subject to a challenge for cause, and such accused has exhausted his peremptory challenges, and a further juror be presented whom he states to be objectionable to him, then it will not be necessary for accused to show in what manner such further juror was objectionable to him, nor to show that such juror was an unfair or partial juror.

In further words, we think the accused should only be required to exercise a peremptory challenge on the objectionable juror and not a challenge for cause, nor show grounds for a challenge for cause, nor to show why such juror was objectionable to him."

Assuming, without deciding, that Townsend and Morin were disqualified and that the challenges for cause should have been sustained,[1] we observe from the meager record of the voir dire examination before us that it does not reflect that the appellants used peremptory challenges on Townsend and Morin. While other evidence in the record reflects that neither served on the jury, the record is silent as to whether a forced peremptory challenge to each juror was the reason. Still further, and more importantly, there is no showing that the appellants exhausted all their peremptory challenges. There are no jury lists or other evidence to show what was done in this regard. We also observe there is no support for the assertion that an objectionable juror served on the jury. While *Wolfe* does not require that a defendant show grounds for a challenge for cause nor show why a particular juror was objectionable, a defendant must at least state that a particular juror or jurors are objectionable to him, after he has exercised peremptory challenges on other prospective jurors who were disqualified and where his challenges for cause on such jurors were overruled.

Appellants' counsel stated to the court:

"There are other jurors left on the prospective list that are objectionable to these defendants and to their attorneys, whom they would strike as prospective jurors were they not compelled to exhause (sic) their twelve challenges allowed by the Court by striking the said two named jurors, John J. Townsend, Jr. and Thomas R. Morin."

We do not conclude that such a blanket statement is sufficient to invoke the *Wolfe* rule. Here there is no showing that any juror who was objectionable served on the jury. The asserted fact that certain other jurors, without designation, were objectionable was certainly not sufficient in and of itself to show that any objectionable juror served on the jury that convicted the appellants.

■ Appellants also contend the "trial court erred in denying defendants the right of effective cross-examination by preventing defendants from introducing a pending federal indictment to establish interest, bias and motive on the part of the State's witness, Francisco Uranga."

The State filed a motion in limine which was granted ordering the appellants not to mention before the jury any indictment pending against Uranga until a hearing was held before the court on its admissibility. During the trial the appellants asked for such hearing which became their bill of exception. At the hearing it was shown that Uranga was under indictment in the United States District Court for the Southern District of Texas, Brownsville Division. The record is in some confusion as to the exact nature of the offense. The indictment was introduced for the purpose of the bill of exception, but is not to be found in the appellate record.[2] The hearing did establish that Uranga was under indictment in federal court, but there was no evidence at such hearing that the federal indictment had any connection with the alleged murder and the evidence elicited was in no way shown to be relevant on the issue of bias, interest, motive, etc. The court ruled that the indictment could not be used for impeachment. In support of such ruling, the State cites Article 38.29, V.A.C.C.P., which provides:

"The fact that a defendant in a criminal case, or a witness in a criminal case, is or has been, charged by indictment, information or complaint, with the commission of an offense against the criminal laws of this State, of the United States, or any other State shall not be admissible in evidence on the trial of any criminal case

<hr>

1. The question presented as to their disqualification is close, very close.

2. The appellants assert the offense was importation of marihuana.

for the purpose of impeaching any person as a witness unless on trial under such indictment, information or complaint a final conviction has resulted, or a suspended sentence has been given and has not been set aside, or such person has been placed on probation and the period of probation has not expired. In trials of defendants under Article 36.09, it may be shown that the witness is presently charged with the same offense as the defendant at whose trial he appears as a witness."

It has frequently been held that by virtue of this statute a witness may not be generally impeached by showing that there is an unresolved charge pending against him, *Hall v. State*, 402 S.W.2d 752 (Tex.Cr.App. 1966); *Webber v. State*, 472 S.W.2d 136 (Tex.Cr.App.1971); *Fentis v. State*, 528 S.W.2d 590 (Tex.Cr.App.1975), and that the intent of the Legislature in enacting the statute was to exclude extraneous offenses for impeachment which had not resulted in a final conviction. *Ridler v. State*, 375 S.W.2d 447 (Tex.Cr.App.1964).[3]

In *Scarborough v. State*, 171 Tex.Cr.R. 83, 344 S.W.2d 886 (1961), and *Campbell v. State*, 480 S.W.2d 391 (Tex.Cr.App.1972), cert. den. 409 U.S. 1008, 93 S.Ct. 442, 34 L.Ed.2d 301, the trial court's refusal to permit the impeachment of a witness by virtue of a pending federal indictment was held not to be error under Article 38.29, V.A.C. C.P., and its forerunner.

Appellants recognize Article 38.29, supra, but call attention to the rule (an exception to Article 38.29) that great latitude should be allowed a defendant in showing *any fact* (including pending charges) which would tend to establish ill feelings, bias, motive and animus upon the part of any witness testifying against him. *Castro v. State*, 562 S.W.2d 252 (Tex.Cr.App.1978); *Jackson v. State*, 552 S.W.2d 798 (Tex.Cr.App.1976); *Robinson v. State*, 550 S.W.2d 54 (Tex.Cr. App.1977); *Simmons v. State*, 548 S.W.2d 386 (Tex.Cr.App.1977); *Evans v. State*, 519 S.W.2d 868 (Tex.Cr.App.1975); *Smith v. State*, 516 S.W.2d 415 (Tex.Cr.App.1974); *Blair v. State*, 511 S.W.2d 277 (Tex.Cr.App. 1974).

The rule above is more likely to be applied where the legal accusation against the witness arises out of the same transaction for which the defendant is on trial, *Smith v. State*, 516 S.W.2d 415 (Tex.Cr.App.1974),[4] but it is not always so limited. See *Simmons v. State*, 548 S.W.2d 386 (Tex.Cr.App. 1977). See also *Garza v. State*, 532 S.W.2d 624 (Tex.Cr.App.1976).

*Evans v. State*, 519 S.W.2d 868 (Tex.Cr. App.1975), was a murder case which was reversed because of the court's refusal to permit the impeachment of the State's material witness. There the court initially wrote:

"The State's objection, that only final convictions are admissible for impeachment of a witness, was sustained. See Article 38.29, Vernon's Ann.C.C.P. However, the offer of the testimony by appellants was based on their contention that the proof of the pending indictment was offered not for general impeachment, but to show the bias, prejudice, interest and motive of the witness in testifying as he did."

It was held that refusal to permit the defendants to show for the purpose of establishing interest, bias and motive that the

---

3. Article 38.29, V.A.C.C.P., which provides that a witness may be impeached only by proof of prior final conviction, did not change, alter or vary rule that proof of prior conviction for crime would be received for impeaching purposes only when offense was a felony one involving moral turpitude, and even then, it must not be too remote. *Neill v. State*, 158 Tex.Cr.R. 551, 258 S.W.2d 328 (1953); *Gaines v. State*, 481 S.W.2d 835 (Tex.Cr.App.1972).

4. In *Smith* this court observed:

"Although the mere fact of an arrest or indictment of a witness is not normally admissible for impeachment purposes to show bias, motive, ill feelings or animus, where the evidence of an arrest or legal accusation arises out of the same transaction for which the defendant is on trial, it may be admissible as such impeachment of the witness. *United States v. Musgrave*, 483 F.2d 327, 338 (5th Cir. 1973)."

See also *Castro v. State*, 562 S.W.2d 252 (Tex. Cr.App.1978).

State's material witness, who gave damaging testimony against defendants, who was similar in build to one defendant and who admitted disliking such defendant, and was, at the time of trial, under felony indictment for sodomy,[5] was prejudicial error. The claim of bias, interest and motive which the defense sought to develop was admissible to afford a basis for an inference of undue pressure because of the witness' vulnerable status as an indictee as well as other possibilities that he might be a suspect in the offense. In reaching this conclusion, the court relies upon *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).[6]

None of the above means that a defendant may demonstrate that there is a pending indictment or other charges against the State's witness and without more have the same introduced merely upon a claim of bias, etc. In *Mutscher v. State*, 514 S.W.2d 905 (Tex.Cr.App.1974), this court wrote:

"The indictments themselves do not show bias, but only serve as a circumstance from which bias can be inferred. The question then becomes whether in addition to the indictments there are other surrounding circumstances from which bias can reasonably and palpably be inferred. We have concluded that there are not. . . ."

In *Smith v. State*, 516 S.W.2d 415 (Tex.Cr.App.1974), the court wrote:

"In the instant case, there was no legal charge or accusation filed against the witness for the events of July, 1973 (disappearance of money at his place of employment). There was no evidence that this occurrence had any connection with the alleged robbery in January, six months earlier, and the rejected evidence was in no way shown to be relevant on the issue of motive or self-interest. See

*Huffman v. State*, Tex.Cr.App., 479 S.W.2d 62, 67. . . ."

In *Garza v. State*, 532 S.W.2d 624 (Tex.Cr.App.1976), the defendant was convicted of murder. On appeal he contended that he was not permitted to discredit and show the interest, bias, motive of the only known eyewitness to the offense, Luis Hernandez, by showing his arrest record and a pending indictment.

In *Garza* this court wrote:

"We also observe that even if defense counsel had not abandoned his attempt to gain admission of this evidence the record in this case is more like that in *Luna v. Beto*, 395 F.2d 35 (5th Cir. en banc 1968) and is unlike those in *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Evans v. State* and *Meyer v. State* 519 S.W.2d 868 (Tex.Cr.App.1975). There is only proof that an indictment was pending; there was no attempt made to show that the pending indictment was being used to force the witness' testimony or that he expected more favorable treatment in his pending case because of his testimony in this case. *Luna v. Beto*, supra (footnote # 5)." See also *Rodriguez v. State*, 399 S.W.2d 818 (Tex.Cr.App.1966).

In the instant case we do not find that appellants urged the trial court to allow them to introduce the indictment to show bias, prejudice, interest, etc., as now urged on appeal. They requested it be admitted to assist their defensive theory that the State's witness, Uranga, had arranged for Tirado's death and to show that after the federal indictment was served on him he had denied several times to defense counsel who talked to him at the police station that he had been so charged.[7] Not having in-

---

**5.** The sodomy indictment against the witness was in the same court as the indictments for murder, and interestingly enough, each time the murder cases were passed the sodomy indictment against the witness was also passed.

**6.** In *Davis* the United States Supreme Court held that refusal to allow state burglary defendant to cross-examine key prosecution witness

to show his probation status following an adjudication of juvenile delinquency denied defendant his constitutional right to confront witnesses, notwithstanding state policy of protecting anonymity of juvenile offenders.

**7.** Uranga testified that he denied to defense counsel at an interview at the jail that he had not been charged in federal court because: (1)

formed the court the introduction of the indictment was to show bias, interest, prejudice, etc., no error is shown. See and cf. *Luna v. Beto*, 395 F.2d 35 (5th Cir. en banc 1968).

We do find that in their argument to the court appellants' counsel in passing did cite to the court *Davis v. Alaska*, supra, and *Evans v. State*, supra, but at no time did they explain holdings, or make it clear to the court the contention now urged on appeal. Even if it can be argued this was enough to alert the court, we conclude the appellants showed only the existence of the federal indictment, and offered no evidence to show that the indictment was being used to force the witness' testimony or that he expected favorable treatment on the federal charge as a result of his testimony, etc.,[8] and there was no showing the indictment was connected with the alleged murder and no showing that it was relevant to the issue of bias, etc. Appellants' contention is overruled.

■ Appellants urge the trial court erred in failing to sustain their timely objection to what they contend were inflammatory and prejudicial photographs. One exhibit taken at the scene of the alleged offense shows the deceased with bloody wounds on the right side of the face and a blood-soaked shirt. The other photographs taken prior to the autopsy showed various wounds on the body of the deceased which were shown to have been inflicted by pistol shots and a shotgun blast. These photographs were admitted into evidence following a verbal description of the body of the deceased. Though the photographs are gruesome, they are competent, material, relevant to the issues of identification of the deceased and the cause of death, and admissible the same as a verbal description of the body of the victim. *Martin v. State*, 475 S.W.2d 265 (Tex.Cr.App.1972); *Whitmore v.*

*State*, 570 S.W.2d 889 (Tex.Cr.App.1976). They were not taken after an autopsy. See *Terry v. State*, 491 S.W.2d 161 (Tex.Cr.App. 1973); *Kalinec v. State*, 500 S.W.2d 146 (Tex.Cr.App.1973). The ground of error is overruled.

■ Appellants also contend the court denied them the effective assistance of counsel by overruling their motion for continuance urged prior to the penalty stage of the trial. The record reflects that on Friday, October 29, 1976, the lead counsel for the appellants, Percy Foreman, after a discussion with the trial judge, left Edinburg to return to Houston. Later that afternoon, the jury returned its guilty verdict. Co-counsel for appellants filed a motion the next morning (Saturday) to postpone for forty-eight hours the penalty stage of the trial to give the lead defense counsel time to return. Two of the three counsel who represented appellants at the penalty stage of the trial had assisted in the guilt stage of the trial and were familiar with appellants' cases. We cannot agree, under the circumstances, that appellants were denied effective assistance of counsel. *Martin v. State*, 401 S.W.2d 831 (Tex.Cr.App.1966); *Taylor v. State*, 507 S.W.2d 563 (Tex.Cr.App.1974); *Miller v. State*, 537 S.W.2d 725 (Tex.Cr.App. 1976), cert. den. 429 U.S. 1099, 97 S.Ct. 1120, 51 L.Ed.2d 547 (1977).

■ Next, appellants urge the court erred in failing to grant their motion for new trial based on allegations that the jury received other evidence prejudicial to them. Appellants contend that this evidence came from certain jurors and concerned statements the appellants were involved with drugs and narcotic trafficking. At the hearing on the motion for new trial, these allegations were supported by the testimony of some jurors called by the appellants, but were sharply contradicted and denied by the jurors called by the State and were even contradicted in part by other jurors

---

he was not guilty of the offense charged, and (2) he knew such defense counsel was not there in his interest.

8. The record reflects that Uranga did not learn of the existence of the federal indictment until seven or eight days after he was held by the

State as a material witness. At such time he had already given a sworn statement to the police outlining his version concerning how the offense was committed which was in substantial conformity with his later testimony at trial.

called by the appellants. We note that drugs and narcotic trafficking were injected into the evidence at trial by appellant's counsel. In any event, it is well established that issues of fact as to jury misconduct raised at a hearing on motion for new trial are for the determination of the trial judge, and where there is conflicting evidence, there is no abuse of discretion where the motion for new trial is overruled. *McCartney v. State*, 542 S.W.2d 156, 162 (Tex.Cr. App.1976), and cases there cited. See also *McIlveen v. State*, 559 S.W.2d 815, 818 (Tex. Cr.App.1978); *Stephenson v. State*, 571 S.W.2d 174, 176 (Tex.Cr.App.1978); *Beck v. State*, 573 S.W.2d 786, 791 (Tex.Cr.App. 1978).

In light of the conflicting evidence as to whether the statements were made, there was no abuse of discretion in the court overruling the motion for new trial.

■ Appellants contend the court erred in communicating with the jury in their absence and the absence of their counsel and in not informing them of the receipt of a note from the jury. At the hearing on the motion for new trial, juror Idalena Gonzalez testified that while deliberating at the guilt stage of the trial the jurors voted 10 to 2 for a guilty verdict and she was one of the two who voted "not guilty." At this point she explained that some of the jurors began shouting and making remarks to her and that she felt harassed and upset and that through the foreman she sent a note to the trial judge. The note, later filed and made a part of the record at the hearing on the new trial motion, read:

"Judge Smith

"After we, the jurors come to give the decision, I would like to see you in close chambers.

"/s/ Ida Gonzalez
"/s/ Arturo Y. Munoz
Foreman."

A woman bailiff testified she delivered the note to the trial judge and delivered the judge's oral reply that he would see the juror after the trial was over to Mrs. Gonzalez, who acknowledged she received such reply. At the hearing, the judge stated he had received the note while counsel was

away "somewhere" and that he informed the bailiff he would see the juror when the trial had been concluded, but that he had not instructed the bailiff to communicate that to the juror.

Article 36.27, V.A.C.C.P., prescribes the procedure for communication between court and jury, and requires the same to be in writing, and the answer delivered in open court in the presence of the defendant and his counsel after it had been first presented to counsel for objections, etc. The giving of additional instructions on the law without complying with the statute constitutes reversible error. *Allaben v. State*, 418 S.W.2d 517 (Tex.Cr.App.1967). See also *Alba v. State*, 492 S.W.2d 555 (Tex.Cr.App.1973). It has been held that, however, communication between court and jury which does not amount to additional instructions, although not in compliance with statute, does not constitute reversible error. *Allaben v. State*, supra, and cases there cited.

In the instant case the court did not intend his oral statement to be communicated to the one juror, but it was so communicated by the bailiff. Though not in compliance with the statute, the communication clearly was not an additional instruction and does not present reversible error under the circumstances, although the trial judge should have made counsel aware of the receipt of the note. The ground of error is overruled.

■ Lastly, appellant Francisco Moreno contends that the trial court, over objection, denied him due process by consolidating his trial for murder before a jury with a hearing on the State's motion to revoke probation (granted after conviction for possession of marihuana) before the court. After the jury had been selected in the murder case, the defendant entered a plea of "not true" to the revocation motion based on the alleged murder offense. After the evidence was heard at the murder trial at the guilt stage of the trial and before the jury returned its verdict as to guilt, the court revoked probation.

Appellant Francisco Moreno argues that there are unique characteristics that distinguish a criminal trial from a revocation of

probation hearing and that the same should not have been consolidated even though the jury apparently knew nothing of the revocation motion. The State cites a number of cases where the trial court took "judicial notice" in a separate revocation hearing of testimony produced in a previous criminal trial where the judge presided and where the defendant was represented by the same counsel at both the trial and the subsequent revocation hearing. These are not in point.

In *Hilton v. State*, 443 S.W.2d 844 (Tex. Cr.App.1969), the penalty stage of a trial for passing a forged instrument before the court following a guilty verdict by the jury was combined with the hearing on a motion to revoke probation. The majority does not discuss the procedure utilized, although the dissent noted the procedure was not recommended but observed there was no objection to the consolidation of the hearings. In the instant case, there was an objection. Despite the objection, and while the procedure is not recommended, appellant has failed to point out how he was harmed or prejudiced by the procedure used. We cannot conclude that the appellant Francisco Moreno has been deprived of due process.

The judgments are affirmed.

ROBERTS, J., concurs.