21835

The STATE, Respondent, v. Dale Robert YATES, Appellant.

(310 S. E. (2d) 805)

*Stephen J. Henry* and *John I. Mauldin,* Greenville, and *South Carolina Com'n of Appellate Defense, for appellant.*

*Atty. Gen. Daniel R. McLeod, Sr., Asst. Atty. Gen. Brian P. Gibbes* and *Asst. Atty. Gen. Harold M. Coombs, Jr.,* Columbia, and *Sol. William B. Traxler,* Greenville, *for respondent.*

Dec. 22, 1982.

*Per Curiam:*

Appellant, Dale Robert Yates, was indicted and convicted of murder, armed robbery, assault and battery with intent to kill, and conspiracy. After being found guilty of murder, the jury recommended at the second phase of the bifurcated trial, that he should die by electrocution. From these convictions and sentence, he appeals. The basic issue involved in the appeal is whether the death sentence should be carried out.

On February 12, 1981, David Loftis (not on trial), Henry Davis (killed in the robbery), and Appellant Yates talked about various places to rob and rode around in the car of Davis looking for a store which could be easily robbed. As a part of the plan, they borrowed a gun from the Appellant's brother.

On the following day, February 13, they continued to ride around, casing places to rob. The Appellant and Davis left Loftis (who turned state's evidence) at a shopping mall and drove away with the pistol under the passenger's side of the front seat. The Appellant and Davis subsequently entered Wood's rural store, by the Appellant's own testimony, for the purpose of committing armed robbery. Appellant was armed with the pistol and Davis with a knife. They demanded and received approximately $3,000 from Willie Wood, who was alone and in charge of the store operation. When Willie Wood failed to cooperate to the satisfaction of the robbers, the Appellant shot him, but not fatally. About that time, the mother of Willie Wood, who was the postmistress in the adjoining building, came upon the scene. The Appellant ran out of the store, taking the money and the gun. Davis remained in the store, and stabbed Mrs. Wood to death with his knife. Willie Wood succeeded in obtaining a gun and killed Davis. After Appellant waited in Davis' car and concluded that Davis had been caught, he drove off, hid the money and pistol in a wooded area, and was later apprehended.

The Appellant testified in his own behalf. His testimony was not inconsistent with the facts recited above. It was his contention that he did not kill Mrs. Wood and that it was his intent all along to abandon the robbery without hurting anybody if the victims refused to cooperate.

The Appellant has stated forty exceptions in quest of a reversal of the convictions and sentence. These exceptions have been argued in the form of twenty questions as included in the Appellant's Brief.

The first three questions submit error on the part of the trial judge in (1) qualifying jurors Volpe, Wallace, Springfield, and Trammell, (2) in excusing certain jurors because of their opposition to capital punishment, and (3) refusing to excuse prospective jurors because of their response to *voir dire* questions. We have reviewed the relevant portions of the record dealing with these exceptions and the jurors involved. The interrogations of jurors must be considered as a whole. The qualifications should not be determined on the basis of isolated questions and answers not truly meaningful. The judge must exercise his discretion in qualifying and excusing jurors. We find no error. Certainly, there is

no abuse of discretion. Appellant's rights, under *Witherspoon v. Illinois*, 391 U. S. 510, 88 S. Ct. 1770, 20 L. Ed. (2d) 776 (1968) have not been violated. Principles enunciated in that case have been respected and applied.

Next, Appellant asserts that the trial court erred in denying the motions for change of venue, a change of forum and for additional peremptory challenges. The first two of these are discretionary; peremptory challenges are controlled by statute. We find no showing that this discretion has been abused or that Appellant has suffered from actual juror prejudice. *State v. Thompson*, 276 S. C. 616, 281 S. E. (2d) 216 (1981), *State v. Plath*, 277 S. C. 126, 284 S. E. (2d) 221 (1981). The trial court properly denied these motions.

Early on, we point out that throughout the trial, the prosecuting attorney made it clear that he was not prosecuting the Appellant on the theory of a felony murder. It was his contention that both Appellant Yates and deceased Davis were present aiding and abetting each other in the commission of a planned armed robbery and that the hand of one was the hand of all. The judge charged the law of common law murder applicable in this state.

Appellant argues that the trial court erred in denying his motion to strike armed robbery as an aggravating circumstance. The possibility that Appellant was convicted on a theory of vicarious liability and then sentenced to death based upon the aggravating circumstances of armed robbery which was the foundation of the original murder conviction is asserted by Appellant to be reversible error.

The trial judge in the penalty phase of the trial instructed the jury that the only statutory aggravating circumstance which they were to consider was the murder which was committed while the Defendant was in commission of the crime of robbery while armed with a deadly weapon. This is a statutory aggravating circumstance pursuant to South Carolina Code § 16-3-20(C)(a)(1)(e) (Cum. Supp. 1981). Since this state adheres to the common law rule of murder and makes no distinction between murder and felony murder, a statutory aggravating circumstance of murder in a death penalty case remains as such regardless of whether the crime charged is murder or felony murder. *State v. Thompson, supra*. The Appellant is equally responsible for the stabbing death of

Mrs. Wood, even though he did not actually cast the fatal blows. Appellant and Henry Davis entered the store armed and did commit a robbery. As a direct result of their joint actions in committing the armed robbery, Mrs. Wood was killed.

> That States have authority to make aiders and abettors equally responsible, as a matter of law, with principals, or to enact felony-murder statutes is beyond constitutional challenge. *Lockett v. Ohio*, 438 U. S. 586, 602, 98 S. Ct. 2954, 2963, 57 L. Ed. (2d) 973 (1978).

There was no error in the trial judge's denying Appellant's motion to strike armed robbery as an aggravating circumstance.

Appellant further argues that the trial court erred in denying Appellant's motion to authorize the spending of certain state funds pursuant to South Carolina Code § 16-3-26(C) for a jury selection expert and for an expert as to the non-deterrent effect of capital punishment.

The decision of the amount of statutory funds to be expended rests in the discretion of the trial judge. This court will not disturb such decisions absent a showing of an abuse of that discretion. Appellant requested a five-hundred dollar fee for a jury selection expert. This expert stated that he would provide his expertise regardless of whether or not the court ordered the payment of his fee. His services were available in spite of the lower court's refusal to authorize such funds.

We are of the opinion that the trial judge did not abuse his discretion in denying these requests. This statute does not require the trial judge to honor every request made by defense counsel. But only those requests that "... are reasonably necessary for the representation of the defendant...." The court is empowered to decide which requests are appropriate. No error.

Appellant asserts that the trial court erred in allowing the Solicitor to express his opinion of the deterrent effects of capital punishment in argument to the jury. In reviewing this argument, as a whole, we find the argument to be within the perimeters permitted by this Court. The Solicitor's argument was acceptable and well within the confines as set forth by the lower court. The trial judge stated

before these arguments that both sides would be allowed wide latitude in arguing their respective positions concerning the deterrent effect of capital punishment.

Appellant challenges the trial court's refusal to enjoin the Solicitor from seeking the death penalty in his case.

Appellant based this challenge on the prosecutor's record of handling previous death penalty cases involving triggermen and non-triggermen. A triggerman is the person who actually fires the fatal shots or uses the deadly weapon to cause a death. Appellant argues that the Solicitor normally sought the death penalty only against the triggerman.

It would be error for the trial judge to tell a Solicitor how to determine whether the death penalty should be sought. This is the prerogative of the Solicitor. The exception is without merit.

Appellant's motion seeking to prevent pre-trial press coverage of the preliminary hearing was properly denied by the magistrate in question. Appellant has failed to show any actual prejudice by the press coverage or the magistrate's handling of this one limited purpose phase of the trial.

The trial judge's finding of ". . . fact beyond any reasonable doubt that this defendant is competent to stand trial . . ." is well supported by ample evidence before the lower court. Appellant's exception as to his competency to stand trial is without merit.

Appellant asserts that it was error for the trial court to deny his request for separate juries in the guilt and penalty phase of the trial. Also, it was error to excuse potential jurors who were opposed to the death penalty. The death penalty statute in South Carolina does not contemplate or provide for two separate juries in such a trial. This court has resolved the issue of disqualifying jurors who oppose the death penalty adversely to the Appellant in *State v. Hyman*, 276 S. C. 559, 281 S. E. (2d) 209 (1981); *State v. Linder*, 276 S. C. 304, 278 S. E. (2d) 335 (1981) and *State v. Goolsby*, 275 S. C. 110, 268 S. E. (2d) 31 (1980).

When Appellant was testifying in his own behalf, the State, at cross-examination, was allowed for purpose of impeachment to introduce Appellant's prior criminal record as follows: two indictments involving house-breaking

and larceny; four indictments charging the crime of larceny; and four indictments charging arson. It is uncontested that the house-breaking and larceny charges were appropriate. Appellant urges, however, that the court erred in allowing in evidence the four charges involving arson. They involved the burning of three barns and a hut. All of these were relevant on the credibility issue. Offenses involving moral turpitude are permitted but those not involving moral turpitude should be excluded. Whether a particular offense constitutes a crime of moral turpitude has been developed in South Carolina on a case by case basis as a matter of common law. The traditional definition of moral turpitude is:

> . . . an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow man, or to society in general, contrary to the accepted and customary rule of right and duty between man and man. . . . *State v. Horton*, 271 S. C. 413, 248 S. E. (2d) 263 (1978).

We hold that arson involves an act of baseness, vileness and depravity. Grand larceny is beyond question an offense involving moral turpitude. There is involved the usurpation of another's personal property with intent to commit it to the use of the taker. Arson, like vandalism, is, in many senses of the word, more reprehensible. It involves the destruction of the property of another with not only the intent to deprive the true owner of its use but to also deprive any other person of its use and benefits. We hold that the trial judge correctly admitted the conviction of arson for the limited purpose of impeaching the witness.

Appellant requested by way of discovery an out of court statement made by Willie Wood. The trial court obtained a copy of this statement and advised Appellant's counsel: "I'll give it to you if you need it." The statement contained the same basic facts as testified by Mr. Wood during the trial. The information within the statement is consistent with the indictment and trial testimony. The Appellant was not deprived of information of which he was not already aware and which was actually available to him.

Appellant argues that the lower court erred by failing to direct a verdict for Appellant as to the murder count. We disagree. The evidence must be viewed in light most

favorable to the State and any evidence, direct or circumstantial, reasonably tending to prove guilt of the accused, creates a jury issue. *State v. Hall,* 268 S. C. 390, 395, 234 S. E. (2d) 219, 221, *cert. denied,* 434 U. S. 870, 98 S. Ct. 211, 54 L. Ed. (2d) 147 (1977).

Appellant and Henry Davis planned and jointly executed an armed robbery. The Appellant was armed at the time of the robbery with a pistol which he used to shoot Mr. Wood, from whom money was taken. Appellant drove away only after he (Appellant) thought Davis had been caught. Meanwhile, Davis had stabbed Mrs. Wood to death.

"One who joins with another to accomplish an illegal purpose is liable criminally for everything done by his confederate incidental to the execution of the common design and purpose." *State v. Woomer,* 276 S. C. 258, 277 S. E. (2d) 696 (1981). *State v. Hicks,* 257 S. C. 279, 284, 185 S. E. (2d) 746, 748 (1971). South Carolina adheres to the common law rule of murder and makes no distinction between murder and felony murder. *State v. Thompson,* 276 S. C. 616, 281 S. E. (2d) 216 (1981), citing *State v. Judge,* 208 S. C. 497, 38 S. E. (2d) 715 (1946). The evidence made a jury issue as to the murder charge.

Appellant asserts as error the trial judge's refusal to charge the state's request number 3, concurred in by the Appellant, which set forth a theory of felony murder. As stated above, the state did not proceed on the felony murder theory. The proposed charge was not a correct statement of the law applicable to the present case. The trial judge must determine the law to be charged from the evidence presented. *State v. Linder,* 276 S. C. 304, 278 S. E. (2d) 335 (1981). We are of the opinion that the trial judge correctly and precisely determined the applicable law and charged it.

The Appellant requested the trial judge to charge the jury as a mitigating circumstance: "That Dale Robert Yates did not kill the victim Helen Wood." This request was made incident to the penalty phase charge of the bifurcated trial after Appellant had already been convicted of murder. The judge very properly told counsel, in lieu of granting the request, "you may argue it [to the jury] all you wish to." Presumably, counsel did exactly that. The fact that Yates did not do the stabbing personally was one of the facts upon

which counsel relied in hopes of obtaining a life sentence. Instead of charging the jury in the language suggested by counsel, the judge submitted a charge which was reduced to writing and taken to the jury room, as required by the code, which reads as follows:

> Secondly, the Defendant asks you to consider that the Defendant was an accomplice to the murder, committed by another person, and his participation was relatively minor. In other words, that embraces the theory that the Defendant did not, himself, personally strike the fatal blow.

The charge, first orally and then in writing, to the jury, let it know that it should give consideration to the fact that Yates did not personally stab Mrs. Wood. The thought counsel wished the judge to convey was actually given to the jury, although not in the exact verbiage requested. We find no error.

> The next issue submitted to the Court involves the application of a portion of § 16-3-20(C) (Cum. Supp. 1981), which reads as follows:

> Where a sentence of death is not recommended by the jury, the court shall sentence the defendant to life imprisonment. In the event that all members of the jury after a reasonable deliberation cannot agree on a recommendation as to whether or not the death sentence should be imposed on a defendant found guilty of murder, the trial judge shall dismiss such jury and shall sentence the defendant to life imprisonment.

After the jury had deliberated for approximately fifty minutes whether the Appellant should receive a life sentence or a death sentence, the foreman reported that the jury was deadlocked. The judge, in a brief statement, said: ". . . I would not conclude that after the length of time which you have deliberated that you have given due and thorough deliberation to the matter before you, and I am going to ask you to return to the jury room and continue your deliberations." The jury complied and returned approximately two and one-half hours later with a verdict recommending the death penalty. Appellant contends that the trial judge should have told the jury

that if it was not capable of breaking the deadlock, the court would impose a life sentence. This same issue was before this Court and was settled in *State v. Adams*, 277 S. C. 115, 283 S. E. (2d) 582 (1981). The words of the Court are equally applicable here. We said:

> The language of the statute provides that where a sentence of death is not recommended by the jury, a life sentence must be given. The situation implicitly envisioned here is that normally the jury will unanimously either recommend life or death. The undecided jury is the exception. That portion of the statute addressing the legal effect given to the existence of an unalterably divided jury is addressed to the trial judge only and need not be divulged to the jury.

The last questions raised by the Appellant call upon this Court to perform the duty imposed upon it by § 16-3-25(C) of our Code. In addition to the traditional alleged errors of law which the Court must rule upon, the statute imposes upon the Court, the duty to

... [C]onsider the punishment. ...

. . . .

(C) With regard to the sentence, the court shall determine:

(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor, and

(2) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in § 16-3-20, and

(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

It is the contention of the Appellant that this Court should vacate his death sentence because it was influenced by passion, prejudice and arbitrary factors and that the sentence of death was excessive or disproportionate to the penalty imposed in similar cases when both the crime and the defendant are considered. We discussed the duty of the Court under the statutory requirements in the recent case of *State v. Copeland*,

*et al.*, 278 S. C. 572, 300 S. E. (2d) 63 (1982), to which reference is made. While the duty imposed is a difficult one because no two defendants and no two crimes are exactly alike, it is not an unsurmountable chore. Prior to imposition of sentence, the trial judge, who heard the entire case, made this finding:

> Mr. Yates, as the trial judge in the case just concluded in which you are indicted for the crime of murder, prior to imposing the death sentence upon you, I find as an affirmative fact beyond any reasonable doubt that the evidence warrants the imposition of the death penalty and that its imposition is not a result of prejudice, passion, or any other arbitrary factor.

The totality of the record abundantly supports the trial judge's finding. We agree that the evidence warrants the death penalty and our independent finding and conclusion is that the penalty was not the result of prejudice, passion or any other arbitrary factor.

The Appellant emphasizes more particularly his contention that the sentence is disproportionate to penalties imposed in similar cases. He argues that he personally did not stab and cause the death of Mrs. Wood. He testified during the trial that at the time of her death he was not in the store but had departed to the getaway car.

While the case of *Enmund v. Florida,* 458 U. S. 782, 102 S. Ct. 3368, 73 L. Ed. (2d) 1140 (1982) had not been decided at the time of the trial, it has been argued orally and we consider it in the light of Appellant's reliance upon it. In *Enmund,* Sampson and Jeannette Armstrong went to the backdoor of the house of Thomas and Eunice Kersey. Sampson Armstrong grabbed Mr. Kersey, pointed a gun at him and told Jeannette Armstrong to take his money. Sampson Armstrong, and perhaps Jeannette Armstrong, then shot and killed both of the Kerseys, dragged them into the kitchen, took their money and fled. Enmund was at that time in a parked car approximately two hundred yards from the house. He was the getaway man. After the Supreme Court of Florida affirmed Enmund's conviction of murder and his death penalty, the Supreme Court of the United States granted *certiorari* to determine "... whether death is a valid penalty under the Eighth and Fourteenth Amendments for one who neither took life, attempted

to take life nor intended to take life." The gravamen of the holding that Enmund's death penalty was impermissibly excessive under the Eighth Amendment of the United States Constitution is to be found in the following language of the Court:

> Here the robbers did commit murder; but they were subjected to the death penalty only because they killed as well as robbed. The question before us is not the disproportionality of death as a penalty for murder, but rather the validity of capital punishment for Enmund's own conduct. The focus must be on *his* culpability, not on that of those who committed the robbery and shot the victims, for we insist on "individualized consideration as a constitutional requirement in imposing the death sentence," *Lockett v. Ohio*, 438 U. S. 586, 605 [98 S. Ct. 2954, 2965, 57 L. Ed. (2d) 973] (1978) (footnote omitted), which means that we must focus on "relevant facets of the character and record of the individual offender." *Woodson v. North Carolina*, 428 U. S. 280, 304 [96 S. Ct. 2978, 2991, 49 L. Ed. (2d) 944] (1976). Enmund himself did not kill or attempt to kill; and as construed by the Florida Supreme Court, the record before us does not warrant a finding that Enmund had any intention of participating in or facilitating a murder. Yet under Florida law death was an authorized penalty because Enmund aided and abetted a robbery in the course of which murder was committed. It is fundamental that "causing harm intentionally must be punished more severely than causing the same harm unintentionally." H. Hart, Punishment and Responsibility 162 (1968). Enmund did not kill or intend to kill and thus his culpability is plainly different from that of the robbers who killed; yet the state treated them alike and attributed to Enmund the culpability of those who killed the Kerseys. This was impermissible under the Eighth Amendment.
>
> . . . .
>
> For purposes of imposing the death penalty, Enmund's criminal culpability must be limited to his participation in the robbery, and his punishment must be tailored to his personal responsibility and moral guilt.
>
> . . . .

Because the Florida Supreme Court affirmed the death penalty in this case in the absence of proof that Enmund killed or attempted to kill, and regardless of whether Enmund intended or contemplated that life would be taken, we reverse the judgment upholding the death penalty and remand for further proceedings not inconsistent with this opinion.

The difference between the culpability of Enmund and the culpability of the Appellant is readily apparent. The culpability is different because the degree of participation was different. Enmund expected the Armstrongs to rob the Kerseys, bring the money to the car and that all would depart. On the other hand, Appellant Yates possessed the more potent weapon, a gun, and failed to kill Willie Wood merely because his aim was less than perfect. It is of little significance that the life he intended to take and attempted to take was that of Willie Wood instead of his mother, who was actually stabbed. We have no difficulty in differentiating the case at hand from that of *Enmund.*

There can be no serious doubt but that the evidence cited hereinabove together with the remainder of the record, amply supports the jury's finding of a statutory aggravating circumstance as enumerated in § 16-3-20 of our Code. Section 16-3-20(C)(a) defines one of the aggravating circumstances as follows:

(1) Murder was committed while in the commission of the following crimes or acts:

... (e) robbery while armed with a deadly weapon, ...

This aggravating circumstance was proven by the Appellant's own testimony. There are no offsetting mitigating circumstances of consequence.

In determining whether or not the sentence here imposed is excessive or disproportionate in light of the crime and the defendant, this Court has reviewed the entire record. We have also considered the circumstances of *State v. Gilbert,* 277 S. C. 53, 283 S. E. (2d) 179, *cert. denied,* 456 U. S. 984, 102 S. Ct. 2258, 72 L. Ed. (2d) 863, the only prior holding of this Court suitable for comparison. In that case, the two defendants, Gilbert and Gleaton, spent a morning cruising in search of a target to rob. The same prelude to crime also appears in the record of *State*

*v. Thompson,* 278 S. C. 1, 292 S. E. (2d) 581, *cert. denied,* 456 U. S. 938, 102 S. Ct. 1996, 72 L. Ed. (2d) 458, rehearing denied 457 U. S. 1112, 102 S. Ct. 2917, 73 L. Ed. (2d) 1323. In the instant case, appellant with Davis and Loftis apparently contemplated robbery for over a day, making a diligent search of Greenville County for just the right setting. Indeed, Loftis, one of the accomplices, withdrew from the enterprise before the actual robbery and testified to this lengthy prologue.

As in *Gilbert, supra,* Appellant and his cohort, Davis, found a solitary, apparently unarmed victim in Mr. Willie Wood. In almost every respect, the robbery unfolded as in the case of Gilbert and Gleaton with one assailant wielding a knife and the other a pistol. Mr. Wood was directed to lean over the store counter by Davis who appeared ready to stab him with the knife. At this point, however, the victim refused to obey. At Davis' command, the Appellant fired two bullets at Wood from close range and fled. From this a jury could conclude beyond a reasonable doubt that Appellant fully intended Wood's death, either by Davis' hand or his own, in the course of this armed robbery.

Hereafter the facts diverge from our previous cases. Mr. Wood did not die from his wound but instead seized his own gun and fought off Davis. Willie Wood's sixty-eight-year-old mother then came upon the scene and was stabbed to death by Davis, who in turn was shot and killed by Wood. Although this outcome sets the instant case apart from previous capital sentences we have affirmed, it is sufficient for our purposes that the Appellant displayed the same intent and followed the same pattern of preparation as Gilbert, Gleaton and Thompson before him.

In mitigation, Appellant offered his own testimony and that of his mother. The jury learned that Appellant had been a poor student in school, achieving basically a ninth grade education. In Appellant's own words, he was more interested in "getting out and having fun, shooting pool." If given a life sentence, however, he intended to write a book, study, and improve the prison system. Appellant frankly conceded that he had not managed to do these things during ten previous periods of incarceration. Both Appellant and his mother testified generally that he had some history of drug abuse and that, most importantly, he allowed himself to be influenced by

Davis, the deceased accomplice. Appellant did not contend, however, that he was actually inebriated at the time of the robbery nor that Henry Davis forced him to participate.

The trial judge meticulously instructed the jury on the available mitigating circumstances under § 16-3-20(C) (b) (1), (4), (5) and (7). In addition, the trial court orally and in writing directed the jury to consider any other mitigating circumstances presented by the defendant.

In our view, the Appellant had the benefit of every reasonable explanation for his acts. We are satisfied that the jury properly found the aggravating circumstance of robbery while armed with a deadly weapon and did so without any influence of passion, prejudice or other arbitrary factor. The testimony in mitigation is comparable to that in *State v. Gilbert, supra,* if not somewhat less impressive, given the claim of Gilbert and Gleaton that they had partaken of drugs and were acting solely on impulse. We are satisfied that the penalty here imposed is neither excessive nor disproportionate in light of this crime and this defendant. Given that we have upheld a comparable sentence in the comparable case of *State v. Gilbert, supra,* we are confident that the finding of this jury represents consistent application of the ultimate sanction in this category of capital crime.

As indicated hereinabove, Appellant has filed forty exceptions in quest of a reversal. Many have not been argued and some have admittedly been abandoned. Issues not argued are normally not considered by this Court but in light of the penalty involved, we have considered all exceptions and the entire record to ascertain if there has been committed prejudicial error; we find none. The convictions and sentence of the Appellant, Dale Robert Yates, are, accordingly,

Affirmed.