279 S.C. 417 (1983)
308 S.E.2d 781
The STATE, Respondent,
v.
Edward Lee ELMORE, Appellant.
21996
Supreme Court of South Carolina.
November 1, 1983.
*418 *419 David I. Bruck, of S.C. Commission of Appellate Defense, Columbia, for appellant.
Atty. Gen., T. Travis Medlock, Retired Atty. Gen., Daniel R. McLeod, and Asst. Attys. Gen., Harold M. Coombs, Jr., and Carolyn M. Adams, Columbia, and Sol. William T. Jones, Greenwood, for respondent.
November 1, 1983.
Per Curiam:
Appellant Edward Lee Elmore was convicted of murder, first degree criminal sexual conduct, and burglary and sentenced to death. We reverse the convictions, vacate the sentence and remand for a new trial.
The appellant first contends that the trial judge erred in not holding a hearing to determine his competency to stand trial. Appellant relies on State v. Blair, 275 S.C. 529, 273 S.E. (2d) 536 (1981) and Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed. (2d) 103 (1975), to support this contention. We feel that these cases are distinguishable. In each of these cases, the defendant's sanity was placed in issue throughout the proceedings.[1] The defendants in Blair and its predecessor Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 *420 L.Ed. (2d) 815, had histories of mental disorders prior to trial, while the defendant in Drope attempted to commit suicide during trial.
Here, the appellant underwent psychiatric examination on two occasions prior to the commencement of trial and was adjudged competent. Further, both the defense and the State introduced evidence of appellant's intelligence and emotional stability on numerous occasions during the trial. We find no error.
Next, the appellant asserts that the trial judge erred in overruling appellant's motions to disqualify jurors Chalmers and Pinson for cause.
Chalmers, after being seated as a juror, returned to open court and revealed that assistant solicitor Selma Jones was his daughter's closest friend. The trial judge re-examined Chalmers and assured himself that the juror was impartial. See State v. Gulledge, 277 S.C. 368, 287 S.E. (2d) 488 (1982). He then gave both the defense and the State the opportunity to exercise a peremptory challenge against Chalmers, but both sides declined to do so.
The mere fact that any prospective juror is a friend or even a relative of the assistant solicitor or solicitor trying the case does not automatically disqualify him. State v. Franklin, 267 S.C. 240, 226 S.E. (2d) 896 (1976); State v. Nicholson, et al., 221 S.C. 399, 70 S.E. (2d) 632 (1952). The qualification of a prospective juror is addressed to the sound discretion of the trial judge, whose decision will not be disturbed unless wholly unsupported by the evidence. State v. Gilbert & Gleaton, 277 S.C. 53, 283 S.E. (2d) 179, 180 (1981), cert. den., 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed. (2d) 863.
We hold the trial judge did not abuse his discretion in qualifying Chalmers. In addition, appellant "did not exhaust his peremptory challenges, and therefore, is not in a position to avail himself of error in overruling challenges for cause." State v. Britt & Westbury, 237 S.C. 293, 306, 117 S.E. (2d) 379, 386 (1960), cert. den., 365 U.S. 886, 81 S.Ct. 1040, 6 L.Ed. (2d) 197. We find these authorities controlling as to the qualification of juror Pinson.
Appellant also argues that juror Covington's responses to the trial judge's questions regarding the juror's views on capital punishment did not clearly indicate an *421 inability to return a sentence of death if mandated by the evidence. We find the trial judge "had a reasonable basis to conclude that [this] prospective [juror] would be unable to faithfully discharge [his] responsibilities as [a juror] under the law" and therefore properly excluded the jurors for cause. State v. Linder, 276 S.C. 304, 313, 278 S.E. (2d) 335, 340 (1981); State v. Copeland & Roberts, S.C. 300 S.E. (2d) 63 (1982).
Appellant next argues that the trial judge's instruction on the presumption of malice from the use of a deadly weapon constituted a mandatory presumption rather than a permissive inference. We agree. We suggest the following charge:
The law says if one intentionally kills another with a deadly weapon, the implication of malice may arise. If facts, are proved beyond a reasonable doubt, sufficient to raise an inference of malice to your satisfaction, this inference would be simply an evidentiary fact to be taken into consideration by you, the jury, along with other evidence in the case, and you may give it such weight as you determine it should receive.
We caution the bench, that hereafter only slight deviations from this charge will be tolerated.
Appellant next contends that the trial judge erred by failing to charge the law of alibi. "To establish an alibi the accused must show that he was at another specified place at the time the crime was committed, thus making it impossible for him to have been at the scene of the crime." State v. Robbins, 275 S.C. 373, 375, 271 S.E. (2d) 319, 320 (1980). At trial, appellant was unable to remember, with any degree of certainty, where he was on the night of the murder. We therefore find no error in the trial judge's failure to charge the law of alibi as "a purported alibi which leaves it possible for the accused to be the guilty person is no alibi at all." Robbins, 275 S.C. at 375, 271 S.E. (2d) 319.
Appellant's final contention of error as to the guilt phase of the trial concerns the trial judge's entering the jury room, accompanied by counsel from both the state and defense, to answer a question of the jury. Although we find no actual prejudice in this instance, we hold this conduct to be reversible error regardless of the presence of *422 counsel. We caution the bench that this procedure is highly improper and also runs counter to the requirement that in a death case the defendant be present at all stages of trial. State v. Taylor, 261 S.C. 437, 200 S.E. (2d) 387 (1973); State v. James, 116 S.C. 243, 107 S.E. 907 (1921).
Appellant next contends that a recommendation of death could not be based on first degree criminal sexual conduct. We disagree.
S.C. Code Ann. (1976) § 16-3-20(C)(a) lists rape as one of the aggravating circumstances which would allow consideration of the death penalty. Subsequent to the enactment of this statute the legislature enacted S.C. Code Ann. § 16-3-651 et seq. (1976 as amended) which established three degrees of the crime of criminal sexual conduct. First degree criminal sexual conduct requires proof of sexual battery, which by S.C. Code Ann. § 16-3-651(h) (1982 Cum. Supp.) is defined in pertinent part as "sexual intercourse, ... , or any intrusion, ... of any part of a person's body or of any object into the genital or anal openings of another person's body ..." Rape, which is still considered an aggravating circumstance under S.C. Code Ann. § 16-3-20(C)(a) requires carnal knowledge. State v. Tuckness, 257 S.C. 295, 185 S.E. (2d) 607 (1971); State v. Whitener, 228 S.C. 244, 89 S.E. (2d) 701 (1955).
It is evident that it was the intent of the legislature that these terms be interchangeable and that criminal sexual conduct be an aggravated circumstance.
We hold a conviction of criminal sexual conduct in any degree constitutes the offense of rape where the facts on which the conviction was based are sufficient to support a conviction under the previous statutory or common law offense of rape. We held in State v. Summers, 276 S.C. 11, 274 S.E. (2d) 427, 428 (1981), "[t]he term rape is not used but the sexual offenses are referred to as criminal sexual conduct."
Appellant also asserts that the trial judge erred in his definition of physical torture. We disagree. "Torture occurs when the victim is subjected to serious physical abuse before death." Hance v. State, 245 Ga. 856, 268 S.E. (2d) 339, 345 (1980); Hardy v. State, 247 Ga. 235, 275 S.E. (2d) 319 (1981). "Torture also occurs when the victim is subjected to an aggravated battery...." Hance, supra, 268 S.E. (2d) at page *423 345. This term is defined in Georgia Code Ann. § 26-1305 in substantially the same words which the trial judge used in his charge.[2] We feel this definition adequately reflects the intended definition of physical torture as found in S.C. Code Ann. § 16-3-20(C)(a)(1)(i) (1976), (as amended). Therefore, we find no error in the trial judge's charge.
Next, appellant contends that the trial judge's visit to the jury room during the penalty phase, without counsel from either the state or defense, constituted elementary error. We agree. Additionally, the trial judge's request for periodic reports on the status of jury deliberations was not only improper, but was also a violation of elementary hornbook law. State v. Middleton, 218 S.C. 452, 63 S.E. (2d) 163 (1951).
Appellant next claims that the trial judge erred in providing supplemental instructions to the jury upon receiving notice that one member of the jury was apparently voting contrary to the others. The trial judge, after receiving this note, charged:
"[I]n every case, we discussed that with you. We knew what members of the jury panel were opposed to the concept of capital punishment. We went beyond that point and knew and fully explained as I did with each one of you, fully explained the alternative punishments and the bases for each punishment. And in every case of my examination of each one of you, you each, without equivocation, without hesitation, told me under oath that you could render a verdict supported by the evidence and the law in the case, a recommendation of either one of the recommended punishments that is supported by the law and the evidence in the case. Now, of course, I do not wish to identify any persons of the jury, Mr. Foreman, Ladies *424 and Gentlemen, but I felt it was imperative that I go back over this point of the jury selection process with you." (Emphasis added).
We feel that this charge was not only improper but highly prejudicial as the entire instruction was directed solely at those jurors who were voting against the death penalty, while implicitly approving the decision of those jurors who recommended the death penalty. We find this charge to be unjustifiably coercive and thus erroneous. Further, in directing his comments specifically toward those members of the jury who were opposed to capital punishment, the trial judge effectively urged agreement at all cost, rather than reminding the jurors of their right to retain conscientiously held views.
Judge Haynsworth, writing in U.S. v. Rogers, 289 F. (2d) 433, 436 (4th Cir.1961) aptly addressed this problem when he stated:
"Here what was given was not the Allen charge, but only a paraphrase of that portion of it which directs the attention of the jurors to their duty to agree, without the reminder of their duty of dissent if dissent is founded upon reasoned conclusions reasonably arrived at and reasonably held. Without reference to both sides of the coin, a strong statement of the duty of agreement may readily be construed by those jurors in the minority as requiring a deferential surrender to the views, however unreasoned they may be, of the majority."
We feel the trial fudge's supplemental instruction had precisely this effect. We therefore hold this charge to be reversible error and remind the bench that they are limited to the factually neutral charge approved in Allen v. U.S., 164 U.S. 492, 501-502, 17 S.Ct. 154, 157-158, 41 L.Ed. 528 (1896).
Finally, after reviewing the record in favorem vitae, we find that the trial judge complied with the requirements established in Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed. (2d) 1 (1982), when he charged the jury that they could consider any statutory or non-statutory mitigating circumstances. Here the trial judge's charge, taken as a whole, met the Eddings standard, but we suggest *425 the trial bench instruct the jury that they may consider "any" mitigating circumstances.
Accordingly, we reverse appellant's convictions of murder, first degree criminal sexual conduct and burglary, vacate the death sentence, and remand for a new trial.
NOTES
[1] In State v. Blair, the defendant's only defense was insanity. In Pate and Drope the evidence raised "a bona fide doubt" as to defendant[s'] competency to stand trial.
[2] I define physical torture for you as follows: physical torture is the intentional infliction of serious, vile, horrible, or inhuman abuse upon the body of another before death. The instantaneous death of the victim does not constitute torture. Physical torture may include the malicious infliction of bodily harm to another by depriving him, or her, of a member of his, or her, body; or by rendering a member of his, or her, body useless; or by seriously disfiguring his, or her, body or a member of his, or her, body; or the intentional and unmerciful prolonging of the severe pain and abuse to the body of another; or the intentional and unmerciful infliction of serious and extensive physical pain and abuse to the body of another.