## 22561

The STATE, Respondent v. Laverne MORRIS, Appellant.
(345 S. E. (2d) 477)

Supreme Court

*Asst. Appellant Defenders Stephen P. Williams* and *D. Mark Stokes,* both of *S. C. Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Atty. Gen. Harold M. Coombs, Jr., Staff Atty. Norman Mark Rapoport,* Columbia; and *Sol. William L. Ferguson,* York, *for respondent.*

June 9, 1986.

CHANDLER, Justice:

Appellant Laverne Morris (Morris) was convicted of assault and battery of a high and aggravated nature and sentenced to three years confinement.

We reverse and remand for a new trial.

## FACTS

At approximately 11:30 p.m., July 2, 1984, two sisters, Rene and Kelly Farquhar, ages 14 and 12, respectively, were with friends at Lake Wylie in York County. They had driven there in their grandmother's car. Previously, they had run away from home following an argument with their mother.

They either requested or accepted an offer from Morris to drive them to a nearby road where they had earlier parked their grandmother's automobile. While enroute to the automobile Rene and Kelly charge that Morris forced them to commit sexual acts upon him. Morris denies the charges. He admitted to excessive drinking but contended that he resisted sexual advances made upon him by Rene. He ultimately drove the sisters back to Lake Wylie.

Morris was indicted for assault with intent to commit sexual battery upon Rene and Kelly. At the conclusion of the evidence the trial judge directed a verdict as to Rene; he submitted only the offense of assault and battery of a high and aggravated nature as to Kelly.[1] The jury found Morris guilty of that charge.

During cross-examination of Morris the following colloquy took place:

---

[1] The indictment reads "Indictment for Assault and Battery with Intent to Commit Sexual Battery (S. C. Code 16-3-656)." S. C. Code Ann. § 16-3-656 (1976) provides: "Assault with intent to commit criminal sexual conduct described in the above sections shall be punishable as if the criminal sexual conduct was committed." Battery is thus not a necessary element of this offense, but a defendant may be punished as if battery had been committed. Thus, a charge on assault and battery of a high and aggravated nature was submitted to the jury as a lesser included offense under the indictment. *See, e.g., State v. Funchess,* 267 S. C. 427, 229 S. E. (2d) 331 (1976).

SOLICITOR: Now have you ever been convicted of bookmaking?·

DEFENSE COUNSEL: Your Honor, I would object to that, that's not a crime of moral turpitude.

THE COURT: I'm going to permit it, go ahead.

SOLICITOR: What was your answer, sir?

MORRIS: Yes, sir.

SOLICITOR: You've been convicted of bookmaking?

MORRIS: I reckon you call it bookie, I guess that's what you call it.

## ISSUES

The two issues for determination are (1) whether bookmaking is a crime of moral turpitude and (2) if not, whether admission into evidence of Morris' prior conviction for bookmaking was harmless error beyond a reasonable doubt.

## I. BOOKMAKING: CRIME OF MORAL TURPITUDE?

It is firmly established by the decisions of this Court, ■ as well as those of federal and other state jurisdictions, that evidence of a witness's prior conviction may be introduced to impeach his credibility. It is equally firmly established that the conviction must relate to crimes involving moral turpitude. *State v. Yates*, 280 S. C. 29, 310 S. E. (2d) 805 (1982); *State v. Millings*, 247 S. C. 52, 145 S. E. (2d) 422 (1965).

We are required here for the first time to determine ■ whether bookmaking is a crime involving moral turpitude. In its brief the State does not seriously contend that it is.

Moral turpitude was defined by this Court in *Yates* as:

> ... an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow man, or to society in general, contrary to the accepted and customary rule of right and duty between man and man ...

280 S. C. at 37, 310 S. E. (2d) at 810.

Our definition in *Yates*, found at 58 C.J.S. *Moral*, "Moral Turpitude" (1948), was earlier approved in *State v. Horton*, 271 S. C. 413, 248 S. E. (2d) 263 (1978).

Courts of other states that have considered whether the crime of gaming (which includes that of bookmaking) is one involving moral turpitude have uniformly held that it is not. *See, e.g., Hofferman v. Simmons,* 32 N. Y. S. (2d) 244, 177 Misc. 962 (1941); *Parr v. Commonwealth,* 198 Va. 721, 96 S. E. (2d) 160 (1957); *Neill v. State,* 158 Tex. Crim. 551, 258 S. W. (2d) 328 (1953); *Curtis v. State,* 224 Ga. 870, 165 S. E. (2d) 150 (1968).

In *Parr* the Supreme Court of Virginia, relying upon a definition of moral turpitude identical to that in *Yates* and *Horton,* held that evidence of defendant's conviction for gambling was inadmissible for the purpose of impeaching his credibility. The court reasoned

> Our conclusion is that while the conduct of a 'numbers game' is contrary to the public policy of this State and our standard of morals, it is not *per se* immoral or inherently evil and does not involve moral turpitude. To adopt the opposite view would lead to the conclusion that other States legalize and permit operations which are *per se* immoral and inherently evil. It is inconceivable that they would do so.

96 S. E. (2d) at 164.

Bookmaking is denominated a misdemeanor by S. C. Code Ann. § 16-19-130 (1976). We hold that bookmaking, while a violation of law, is not a crime involving moral turpitude.

## II. HARMLESS ERROR?

The State's primary contention is that, assuming bookmaking is not a crime involving moral turpitude, the error committed did not prejudice Morris and, accordingly, was harmless. We disagree.

We recognize the doctrine that where a trial court error is harmless beyond a reasonable doubt, it does not constitute grounds for reversal. *State v. Livingstone,* 282 S. C. 1, 317 S. E. (2d) 129 (1984). It is a doctrine which should be employed guardedly, however, and on a case by case basis.

Here the error cannot be found harmless.

Evidence presented to the jury was essentially limited to the testimony of the two girls and Morris. Their testimony as to what took place from beginning to end is sharply in

conflict: the sisters claim Morris offered to transport them to their automobile, but Morris claims the sisters requested that he take them to Lancaster; the sisters denied Morris' claim that they were smoking marijuana; Rene and Morris each testified that the other initiated sexual advances.

Under these circumstances the credibility of Morris was of paramount importance in his defense. We cannot hold beyond a reasonable doubt that the affirmative answer to the solicitor's impermissible question did not irreparably damage Morris' credibility in each juror's mind.

The prejudice resulting from the improper evidence of Morris' bookmaking conviction was substantial and denied him a fair trial. *State v. Harvey*, 275 S. C. 225, 268 S. E. (2d) 587 (1980).

Reversed and remanded.

NESS, C. J., and HARWELL and FINNEY, JJ., concur.

GREGORY, J., not participating.