22563

The STATE, Respondent v. Gary Lee PATRICK, Appellant.

(345 S. E. (2d) 481)

Supreme Court

*Asst. Appellate Defender Daniel T. Stacey,* of *S. C. Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Atty. Gen. Harold M. Coombs, Jr., Staff Atty. Norman Mark Rapoport,* Columbia, and *Sol. George M. Ducworth,* Anderson, *for respondent.*

Heard March 24, 1986.

Decided June 9, 1986.

*Per Curiam:*

Appellant was found guilty of murder and armed robbery. He was sentenced to death and twenty-five years, respectively. This case consolidates appellant's direct appeal and our mandatory review of the death sentence pursuant to S. C. Code Ann. § 16-3-25 (1976). We affirm the convictions and the armed robbery sentence, but reverse the death sentence and remand for a new sentencing proceeding on the murder charge.

On May 27, 1984, the body of Wayne Richard Morgan was discovered under a bridge, lying in a shallow creek in Oconee County. The victim had been shot in the head and there were several scratches on his body. Traces of blood were found on the bridge above the creek. The victim's pants pockets were pulled inside out and his wallet was missing.

The police learned that a car had been seen in the area the previous night. The car was traced to a body shop and eventually to the appellant. A bullet had passed through the back seat of the car, but the hole had been repaired and covered up. This fact, along with other evidence taken from appellant's car, reasonably led police to conclude that the victim had been shot in the back seat.

## GUILT PHASE

Appellant contends that the trial court's charge on implied malice unconstitutionally shifted the burden of proof to the appellant. He bases this claim on the fact that the trial judge used the word rebuttable two times during his lengthy charge on malice.

The United States Supreme Court has held that jury instructions which create a burden shifting presumption are unconstitutional. *Francis v. Franklin,* 471 U. S. _____ , 105 S. Ct. 1965, 85 L. Ed. (2d) 344 (1985); *Sandstrom v. Montana,* 442 U. S. 510, 99 S. Ct. 2450, 61 L. Ed. (2d) 39 (1979). We have noted this on numerous occasions. *E.g. State v. Peterson,* 287 S. C. 244, 335 S. E. (2d) 800 (1985); *State v. Lewellyn,* 281 S. C. 199, 314 S. E. (2d) 326 (1984); *State v. Elmore,* 279 S. C. 417, 308 S. E. (2d) 781 (1983). In determining whether or not a

jury charge impermissibly shifts the burden of proof, the charge must be considered as a whole. *Francis v. Franklin, supra; State v. Hyman,* 276 S. C. 559, 281 S. E. (2d) 209 (1981), *cert. denied,* 458 U. S. 1122, 102 S. Ct. 3510, 73 L. Ed. (2d) 1384 (1982). As was noted by the United States Supreme Court:

> Analysis must focus initially on the specific language challenged, but the inquiry does not end there. If a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of an offense, the potentially offending words must be considered in the context of the charge as a whole. Other instructions might explain the particular infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption. *Cupp v. Naughten,* 414 U. S. 141, 147, 38 L. Ed. (2d) 368, 94 S. Ct. 396 [400] (1973). This analysis "requires careful attention to the words actually spoken to the jury ..., for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Sandstrom, supra,* at 514, 61 L. Ed. (2d) 39, 99 S. Ct. 2450 [2454].

*Francis v. Franklin,* 471 U. S. at _____, 105 S. Ct. at 1971-72, 85 L. Ed. (2d) at 354.

In the present case, the trial judge's initial charge to the jury concerning implied malice properly adhered to the guidelines set forth in *State v. Elmore,* 279 S. C. 417, 308 S. E. (2d) 781 (1983). Throughout the malice charge, the court maintained an overall tone of permissiveness by repeatedly using such phrases as "may infer malice," "malice may be expressed," and "inference of malice." In the two instances complained of by the appellant, we note that the term "rebuttable" was used in conjunction with the term "inference" rather than "presumption." Additionally, it was followed immediately each time by the instruction that the state bore the burden of proving malice beyond a reasonable doubt and that it was for the jury to determine from all the evidence whether or not malice had been proven.

In *State v. Cooper*, 279 S. C. 301, 306 S. E. (2d) 598 (1983), we held that the expressions "rebuttable" and "reasonable explanation" are impermissible whenever they are susceptible to improper interpretation by the jury as requiring the defendant to personally rebut or explain. After carefully scrutinizing the judge's charge in the case at bar, we find that a reasonable juror, after hearing the entire malice charge, could have understood the charge only as creating a permissive inference of malice, and not a presumption. While we decline to hold that the use of any particular word is per se reversible, we once again admonish trial judges that it is best to never use words such as "rebuttable" in any jury charge.

Appellant next contends that the trial court erred in failing to submit a verdict of involuntary manslaughter to the jury. Paradoxically, appellant's following argument is that the court's jury charge erroneously blended the elements of voluntary and involuntary manslaughter. We agree that the trial judge was required to charge the law regarding involuntary manslaughter. At trial, the state contended that the homicide occurred as the appellant originally had contended in a statement given to law enforcement officers. According to appellant's statement, he, a friend, and the victim began riding around together in appellant's car late one night. All three men had been drinking. Appellant asked the victim if he had any gas money and the victim said no. Appellant stopped his car on a dirt road and the victim got out. Appellant's friend was going to shoot the victim, but the appellant told his friend not to do it. Appellant got the victim back in the car and his friend began beating on the victim. Appellant became concerned because the victim knew their names and might cause trouble for them later. When appellant asked his friend what they ought to do, his friend replied that the appellant should shoot the victim. Appellant stuck his gun back in the car and just pulled the trigger quicker than he thought. Appellant and his friend took the victim's money, dropped the body off a bridge, and cleaned and repaired the car.

At trial, appellant repudiated the statement. He testified that he made the statement under threats by the law en-

forcement officers that his daughter would be taken away and his wife would be arrested. Appellant contended in his testimony that he had gotten out of the car to use the bathroom in the woods. He said he took the gun with him so his friend could not shoot the victim. Appellant claimed that when he was putting the gun back into the car, the victim, apparently thinking that the appellant was going to shoot him, grabbed the end of the barrel causing the gun to fire. Appellant's testimony constituted a sufficient ground for submitting the possible verdict of involuntary manslaughter to the jury.

When the trial judge charged the jury on the lesser ■ included offenses, he improperly blended the elements of voluntary and involuntary manslaughter. The judge clearly instructed the jury that manslaughter is distinguished from murder by the absence of malice and that if the jury found only criminal negligence by the appellant in the handling of a firearm, the jury could consider manslaughter. The jury returned a verdict of murder which, as clearly instructed in the jury charge, necessarily included a finding of malice. Since the jury determined that the appellant acted with malice, it could not have returned a verdict for manslaughter, voluntary or involuntary. *See State v. Gandy*, 283 S. C. 571, 324 S. E. (2d) 65 (1984). As this Court held in *State v. Mulwee*, 94 S. C. 323, 77 S. E. 1027 (1913), an error in instructing the jury as to the difference between voluntary and involuntary manslaughter is immaterial in a conviction for murder. The appellant's allegation that the trial court misstated the defense of accident and incorrectly explained the concept of criminal negligence clearly is without merit when the trial judge's charge is considered as a whole.

Appellant's next assertion is that the assistant solic- ■ itor's guilt phase closing argument contained several misstatements of law and consequently deprived the appellant of due process. The trial judge is vested with broad discretion in dealing with the range and propriety of closing arguments and ordinarily his rulings on such matters will not be disturbed. *E.g. State v. Chaffee*, 285 S. C. 21, 328 S. E. (2d) 464 (1984) *cert. denied,* _____ U. S. _____ , 105 S. Ct. 1878, 85 L. Ed. (2d) 170 (1985); *State v. Copeland*, 278 S. C. 572, 300

S. E. (2d) 63 (1982), *cert. denied*, 460 U. S. 1103, 103 S. Ct. 1802, 76 L. Ed. (2d) 367 (1983). Assuming, without deciding, that the assistant solicitor's minor deviations constituted error, such error would have been rendered harmless in this case when the trial judge correctly charged the jury on those matters. *See, e.g., State v. Portee,* 278 S. C. 260, 294 S. E. (2d) 421 (1982); *State v. Irvin,* 270 S. C. 539, 243 S. E. (2d) 195 (1978). In fact, the assistant solicitor began his closing argument by expressly stating that what he and the other attorney said was not the law of the case and that the judge would charge the law. On appeal, this Court reviews the alleged impropriety of arguments in the context of the entire record. *State v. Linder,* 276 S. C. 304, 312, 278 S. E. (2d) 335, 339 (1981).

Appellant also claims that the jury was not charged correctly regarding the proper use of his prior convictions. It is well established that when a defendant testifies in his own behalf, proof of his prior convictions is admissible only for the purpose of impeachment. *State v. Smalls,* 260 S. C. 44, 194 S. E. (2d) 188 (1973); *State v. Morris,* 243 S. C. 225, 133 S. E. (2d) 744 (1963); *cert. denied,* 377 U. S. 1001, 84 S. Ct. 1935, 12 L. Ed. (2d) 1050 (1964). The record in the instant case demonstrates that the trial judge's charge adequately instructed the jury that, should it choose to do so, it could consider evidence of prior convictions "as an issue of credibility of a witness." The judge's charge, when considered in its entirety, *State v. Hyman,* 276 S. C. 559, 281 S. E. (2d) 209 (1981), *cert. denied,* 458 U. S. 1122, 102 S. Ct. 3510, 73 L. Ed. (2d) 1384 (1982); *State v. Tucker,* 273 S. C. 736, 259 S. E. (2d) 414 (1979), ensured that the appellant was not prejudiced by the introduction of his past crimes.

Appellant further contends that the lower court erred in failing to charge the jury that any reasonable doubt about whether the appellant was guilty of murder or a lesser offense must be resolved in favor of the appellant. It is clear that under the facts of this case the appellant would have been entitled to such a charge if he had requested it. *See State v. King,* 158 S. C. 251, 155 S. E. 409 (1930). It is not error for the court to refrain from giving the charge *supra sponte.* The judge made it clear to the jury that if the state did not prove each element of murder beyond a

reasonable doubt, the jury could not find the appellant guilty of that offense.

During the trial, the jury wished to ask one of the witnesses a question. The jury handed the written question to the judge. After conferring with both attorneys, the judge informed the jury that the question would be answered by the testimony of another witness. The trial judge's statement was not a charge or comment on the facts, but merely an explanation of why he was not presenting the jury's question. Appellant's exceptions relating to this matter are meritless.

## PENALTY PHASE

Appellant contends that the court erred in charging that the jury could consider a statutory mitigating circumstance only if it is supported by the evidence beyond a reasonable doubt. We agree. This Court has never set forth any express standard of proof by which a defendant must prove his statutory mitigating circumstances. *E.g. State v. Singleton*, 284 S. C. 388, 326 S. E. (2d) 153 (1985). We specifically stated in *State v. Linder*, 276 S. C. 304, 311, 278 S. E. (2d) 335, 339 (1981), "The burden is upon the jury to weigh the evidence submitted and determine whether the mitigating factors exist and, if so, the significance to be accorded it." Under our state law, no articulated burden is placed on the capital defendant to prove his statutory mitigating circumstances. The trial judge erred in charging otherwise.

Even though the trial judge, both before and after giving the erroneous charge, correctly charged the jury regarding mitigating circumstances and the lack of any requisite burden of proof, the court never withdrew the erroneous instruction. Merely superimposing a correct statement of law over an erroneous charge only fosters prejudice and confusion. *State v. Peterson*, 287 S. C. 244, 335 S. E. (2d) 800 (1985); *State v. Adams*, 277 S. C. 115, 283 S. E. (2d) 582 (1981).

Additionally, appellant contends that the trial court erred in allowing the introduction of a color photograph which shows the entry wound. The victim is lying on the autopsy table and a considerable amount of blood is present. The photograph does not show the crime

scene or any post-mortem abuse. *See State v. Shaw*, 273 S. C. 194, 208, 255 S. E. (2d) 799, 806 (1979). The state did not need to introduce the photograph to show material facts or conditions. *See State v. Middleton*, 288 S. C. 21, 339 S. E. (2d) 692 (1986); *State v. Edwards*, 194 S. C. 410, 411, 10 S. E. (2d) 587, 588 (1940). The photograph was not substantially necessary and it was highly prejudicial.

It is not necessary for us to reach the remaining issues.

We affirm the murder conviction, the armed robbery conviction, and the armed robbery sentence. We reverse the death sentence and remand for a new sentencing proceeding on the murder charge.

Affirmed in part; reversed in part; and remanded.