YATES *v.* AIKEN, WARDEN, ET AL.

No. 86–6060.   Argued December 2, 1987—Decided January 12, 1988

STEVENS, J., delivered the opinion for a unanimous Court.

*David I. Bruck* argued the cause and filed briefs for petitioner.

*Donald J. Zelenka,* Chief Deputy Attorney General of South Carolina, argued the cause for respondents. With him on the brief was *T. Travis Medlock,* Attorney General.

JUSTICE STEVENS delivered the opinion of the Court.

Petitioner and an accomplice robbed a country store in South Carolina in 1981. After petitioner left the store, a fight occurred in which the accomplice and the storekeeper's mother were both killed. Petitioner was convicted of murder and armed robbery and sentenced to death. His conviction and sentence were affirmed by the South Carolina Supreme Court in 1982. *State* v. *Yates,* 280 S. C. 29, 310 S. E. 2d 805, cert. denied, 462 U. S. 1124 (1983).

At his trial, petitioner testified that the victim had not even entered the store before he left and that he had not intended to kill or to harm anyone. The jury, however, was instructed "that malice is implied or presumed from the use of a deadly weapon."[1] A few months after petitioner's conviction was affirmed, the South Carolina Supreme Court held that it was error to give such an instruction. See *State* v. *Elmore,* 279 S. C. 417, 308 S. E. 2d 781 (1983). Thereafter, petitioner sought a writ of habeas corpus from the South Carolina Supreme Court, arguing that the burden-shifting instruction given at his trial was unconstitutional under the state court's reasoning in *Elmore* and under our decision in *Sandstrom* v. *Montana,* 442 U. S. 510 (1979). While the application for habeas corpus was pending, we decided an-

---

[1] See App. 7; Tr. 1208.

other case involving a burden-shifting instruction, *Francis* v. *Franklin*, 471 U. S. 307 (1985), and petitioner promptly called that decision to the attention of the State Supreme Court. The court denied the writ without opinion.

Petitioner then sought a writ of certiorari in this Court. We summarily vacated the judgment of the South Carolina Supreme Court and remanded the case "for further consideration in light of *Francis* v. *Franklin*." *Yates* v. *Aiken*, 474 U. S. 896 (1985). On remand, the state court determined that the jury instruction at petitioner's trial "suffered from the same infirmities present in *Elmore* and addressed in *Francis* v. *Franklin*." 290 S. C. 231, 233, 349 S. E. 2d 84, 85 (1986). Nevertheless, the court held that petitioner was not entitled to relief. As an explanation for its holding, the court stated that its decision in *Elmore* should not be applied retroactively to invalidate a conviction that was final when *Elmore* was decided. The opinion did not consider whether the decision in *Francis* v. *Franklin* might apply retroactively and also did not discuss our decision in *Sandstrom* v. *Montana*, on which petitioner had relied.

In dissent, Justice Finney reasoned that *Elmore* and *Francis* v. *Franklin* should be applied retroactively because an instruction that shifts the burden of proof on an element of the offense—particularly in a capital case—substantially impairs the truth-finding function of the jury. Moreover, he reasoned, given our decision in *Sandstrom* v. *Montana* in 1979, the case did not represent a significant change in the law.[2]

---

[2] "The doctrine against burden shifting presumptions set out in *Francis* v. *Franklin*, [471 U. S. 307 (1985)], is not a clear break with prior law. The United States Supreme Court in *Sandstrom* v. *Montana*, 442 U. S. 510 . . . (1979), decided prior to *Yates*, held that conclusive presumptions or instructions which shift the burden of persuasion violate the Fourteenth Amendment's requirement that in every criminal trial, the state is required to prove each element of the criminal offense beyond a reasonable doubt. The Court went on to hold, concerning *Elmore*-type errors, that conclusive presumptions conflict with the presumption of innocence with which the law endows the accused. These presumptions, likewise, extend

We granted certiorari because we were concerned that the South Carolina Supreme Court had not fully complied with our mandate. 480 U. S. 945 (1987). We now reverse.

## I

Our order remanding the case for further consideration in the light of *Francis* v. *Franklin* was predicated entirely on the fact that petitioner's challenge to the jury instruction asserted a substantial federal question. Our opinion in *Francis* explained why a challenge of this kind is supported by the Federal Constitution:

> "The Due Process Clause of the Fourteenth Amendment 'protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' *In re Winship*, [397 U. S. 358, 364 (1970)]. This 'bedrock, "axiomatic and elementary" [constitutional] principle,' *id.*, at 363, prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime. *Sandstrom* v. *Montana, supra,* at 520–524; *Patterson* v. *New York*, 432 U. S. 197, 210, 215 (1977); *Mullaney* v. *Wilbur*, 421 U. S. 684, 698–701 (1975); see also *Morissette* v. *United States*, 342 U. S. 246, 274–275 (1952). The prohibition protects the 'fundamental value determination of our society,' given voice in Justice Harlan's concurrence in *Winship*, that 'it is far worse to convict an innocent man than to let a guilty man go free.' 397 U. S., at 372. See *Speiser* v. *Randall*, 357 U. S. 513, 525–526 (1958)." 471 U. S., at 313.

The portion of the state court's opinion concluding that the instruction in petitioner's case was infirm for the reasons "ad-

---

to every element of the crime and invade the truth-finding function which, in a criminal case, the law assigns solely to the jury." 290 S. C., at 239, 349 S. E. 2d, at 88–89.

dressed in *Francis*" was responsive to our mandate, but the discussion of the question whether the decision in *Elmore* should be applied retroactively was not. Our mandate contemplated that the state court would consider whether, as a matter of federal law, petitioner's conviction could stand in the light of *Francis*. Since the state court did not decide that question, we shall do so.

## II

The South Carolina Attorney General submits that we should adopt Justice Harlan's theory that a newly announced constitutional rule should not be applied retroactively to cases pending on collateral review unless the rule places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," *Mackey* v. *United States*, 401 U. S. 667, 692 (1971) (Harlan, J., concurring in part and dissenting in part), or enunciates a procedural rule that is "implicit in the concept of ordered liberty," *id.*, at 693. Under this theory, the Attorney General argues, petitioner would not be entitled to the benefit of our ruling in *Franklin*.

We have already endorsed Justice Harlan's retroactivity analysis for cases pending on direct appeal, see *Griffith* v. *Kentucky*, 479 U. S. 314, 322 (1987); *United States* v. *Johnson*, 457 U. S. 537 (1982), and we have noted, as Justice Harlan did, *Mackey*, *supra*, at 682–687; *Desist* v. *United States*, 394 U. S. 244, 260 (1969) (Harlan, J., dissenting), the important distinction between direct review and collateral review. Compare *Allen* v. *Hardy*, 478 U. S. 255 (1986) (holding that *Batson* v. *Kentucky*, 476 U. S. 79 (1986) does not apply retroactively to cases on collateral review), with *Griffith*, *supra*, at 322–323 (holding that *Batson* does apply retroactively to cases pending on direct review); see, *e. g.*, *Pennsylvania* v. *Finley*, 481 U. S. 551 (1987) (right to appointed counsel on direct appeal not applicable in collateral proceedings). To decide this case, however, it is not neces-

sary to determine whether we should go further and adopt Justice Harlan's reasoning as to the retroactivity of cases announcing new constitutional rules to cases pending on collateral review.

Although Justice Harlan believed that most collateral attacks on final judgments should be resolved by reference to the state of the law at the time of the petitioner's conviction, he emphasized the proposition that many "new" holdings are merely applications of principles that were well settled at the time of conviction. As he explained in *Desist:*

> "The theory that the habeas petitioner is entitled to the law prevailing at the time of his conviction is, however, one which is more complex than the Court has seemingly recognized. First, it is necessary to determine whether a particular decision has really announced a 'new' rule at all or whether it has simply applied a well-established constitutional principle to govern a case which is closely analogous to those which have been previously considered in the prior case law. . . . One need not be a rigid partisan of Blackstone to recognize that many, though not all, of this Court's constitutional decisions are grounded upon fundamental principles whose content does not change dramatically from year to year, but whose meanings are altered slowly and subtly as generation succeeds generation. In such a context it appears very difficult to argue against the application of the 'new' rule in all habeas cases since one could never say with any assurance that this Court would have ruled differently at the time the petitioner's conviction became final." 394 U. S., at 263–264.

This reasoning, which we previously have endorsed,[3] is controlling in this case because our decision in *Francis* was

---

[3] We stated in *United States* v. *Johnson,* 457 U. S. 537, 549 (1982):

"[W]hen a decision of this Court merely has applied settled precedents to new and different factual situations, no real question has arisen as to whether

merely an application of the principle that governed our decision in *Sandstrom* v. *Montana*, which had been decided before petitioner's trial took place. We explicitly so held in *Francis* itself:

> "The question before the Court in this case is almost identical to that before the Court in *Sandstrom:* whether the challenged jury instruction had the effect of relieving the State of the burden of proof enunciated in *Winship* on the critical question of . . . state of mind,' 442 U. S., at 521, by creating a mandatory presumption of intent upon proof by the State of other elements of the offense." 471 U. S., at 313.

> "*Sandstrom* v. *Montana* made clear that the Due Process Clause of the Fourteenth Amendment prohibits the State from making use of jury instructions that have the effect of relieving the State of the burden of proof enunciated in *Winship* on the critical question of intent in a criminal prosecution. 442 U. S., at 521. Today we reaffirm the rule of *Sandstrom* and the wellspring due process principle from which it was drawn. The Court of Appeals faithfully and correctly applied this rule, and the court's judgment is therefore affirmed." *Id.*, at 326–327.

### III

Respondents also argue that South Carolina has the authority to establish the scope of its own habeas corpus proceedings and to refuse to apply a new rule of federal constitutional law retroactively in such a proceeding. We reject this argument for two reasons. First, as we have just ex-

the later decision should apply retrospectively. In such cases, it has been a foregone conclusion that the rule of the later case applies in earlier cases, because the later decision has not in fact altered that rule in any material way."

See also *Truesdale* v. *Aiken*, 480 U. S. 527 (1987) *(per curiam); Dunaway* v. *New York*, 442 U. S. 200 (1979); *Lee* v. *Missouri*, 439 U. S. 461, 462 (1979) *(per curiam).*

plained, *Francis* did not announce a new rule.   Second, we do not read the South Carolina Supreme Court's opinion as having placed any limit on the issues that it will entertain in collateral proceedings.   Since it has considered the merits of the federal claim, it has a duty to grant the relief that federal law requires.

The judgment is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*